IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| TARA SCOTT and WILSON CARTER, INDIVIDUALLY AND AS TRUSTEE OF THE BAILEY MIDDLETON CARTER 2009 TRUST, THE MARY WILSON CARTER 2009 TRUST, and THE WILSON M. CARTER 1998 TRUST,<br><br>Plaintiffs,<br><br>v.<br><br>VANTAGE CORPORATION, VANTAGE ADVISORY MANAGEMENT, LLC, VF(X) LP, TRADELOGIX, LLC, BRIAN ASKEW and GERALD FINEGOLD,<br><br>Defendants. | C.A. No. 17-448-MPT |

**MEMORANDUM ORDER**

**I.    INTRODUCTION**

Plaintiffs Tara Scott and Wilson Carter, individually and as Trustee of the Bailey Middleton Carter 2009 Trust, the Mary Wilson Carter 2009 Trust, and the Wilson M. Carter 1988 Trust, brought this action against Vantage Corporation, Vantage Advisory Management, LLC ("Vantage Advisory"), VF(X) LP ("VF(X)"), Tradelogix, LLC (Tradelogix), Brian Askew, and Gerald Finegold on September 12, 2017.[1] Plaintiffs allege defendants violated section 12 of the 1933 Act, 15 U.S.C.§§771(a)(1) and 771(a)(2) for the sale of unregistered and non-exempt securities (Count I) and for

---

[1] D.I. 16 at 1.

misrepresentations in connection with issue of a security (Count IV).[2] Plaintiffs further allege violations of the Georgia Uniform Securities Act ("O.C.G.A.") and violation of common law fraud (Count X).[3]

Currently before the court is defendants' motion to dismiss plaintiffs' amended complaint, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted.[4]

## II. BACKGROUND

Plaintiffs Tara Scott ("Scott") a citizen of Colorado, and Wilson Carter ("Carter") a citizen of Georgia made investments in Vantage Corporation.[5] Carter also serves as Trustee for the Bailey Middleton Carter 2009 Trust, the Mary Wilson Carter 2009 Trust, and the Wilson M. Carter 1988 Trust.[6]

Vantage Corporation is a Delaware corporation maintaining a principal office in Alpharetta, Georgia, but is not registered to do business in the state.[7] Vantage Corporation is a technology and investment company which specializes in proprietary configurable trading solutions, claiming to have the ability to process substantial amounts of real time financial trading data in order to exploit trading opportunities to generate returns on investments.[8]

Brian Askew ("Askew") and Gerald Finegold ("Finegold") are both citizens of

---

[2] *Id.* at 8, 11.
[3] *Id.* at 10-18.
[4] D.I. 17
[5] D.I. 16 at ¶¶ 1-2.
[6] *Id.* at ¶ 3.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 12.

Georgia.[9]  Finegold is the President of Vantage Corporation and Askew is an officer. Both men serve as directors on the corporation's Board of Directors.[10]  Vantage Corporation has three subsidiaries consisting of Vantage Advisory, VF(X), and Tradelogix.  Vantage Advisory is a Delaware limited liability company, formed as the investment advisor firm for Vantage Corporation's asset management division.[11]  VF(X) is a Delaware limited partnership, operating as an unregistered hedge fund, of which Vantage Advisory is the general partner.[12]  Tradelogix is a Delaware limited liability company.[13]

In 2014 Askew, acting on behalf of Vantage Corporation, made general solicitations to obtain outside investor funding, which included the solicitatiing unaccredited investors.[14]  During this time, plaintiffs were presented with the opportunity to make investments in Vantage Corporation through the purchase of stock.  Plaintiffs contend Askew made fraudulent statements through mail, email, text messages, and telephonic communications.[15]  Askew and Vantage representatives also met with Scott in Colorado during this time.[16]

In 2016, Carter invested a total of $3,000,000 in Vantage Corporation.  His investments were made in Georgia.  On three separate occasions, Carter purchased 476.962702 Class A Shares in Vantage Corporation for $1,000,000 each, occurring

---

[9] *Id.* at ¶¶ 8-9.
[10] *Id.*
[11] *Id.* at ¶ 5.
[12] *Id.* at ¶ 6.
[13] *Id.* at ¶ 7.
[14] *Id.* at ¶¶ 13-14.
[15] *Id.* at ¶ 15.
[16] *Id.*

between January 26 and March 11.[17] A portion of Carter's funds were contributed by the three trusts on which he serves as trustee.[18]

Scott also invested $2,000,000 in Vantage Corporation at this time, and her investments were made in Georgia or Colorado. Her series of purchases began on January 28, 2016, with the purchase of 476.962702 Class A Shares of Vantage Corporation stock for $1,000,000. She subsequently purchased 190.785081 Class A Shares on February 16 for $400,000; 95.39254 Class A Shares on February 22 for $200,000; and 190.785081 Class A shares on March 1 for $400,000.[19] After their initial purchases, plaintiffs each executed joinder agreements in connection with the purchases. Askew received direct or indirect compensation for his role in soliciting these investments for Vantage Corporation.[20]

The stock plaintiffs purchased was a "security" as that term is defined in the 1933 Act, 15 U.S.C. §77b and the Georgia Securities Act, O.C.G.A. §10-5-2.[21] At the time of the solicitations, Askew was acting within the scope of his positions, as an agent on behalf of Vantage Corporation and its subsidiaries, Vantage Advisory, VF(X), and Tradelogix. However, Askew was not registered as a securities salesperson or an investment advisor with the Georgia Commission of Securities required under O.C.G.A. §10-5-2.

Prior to their purchases of Vantage Corporation stock, plaintiffs claim Askew

---

[17] *Id.* at ¶¶ 16-19.
[18] *Id.* at ¶ 21.
[19] *Id.* at ¶¶ 22-26.
[20] *Id.* at ¶ 30.
[21] *Id.* at ¶ 33; *see also* 15 U.S.C. §77b and O.C.G.A. §10-5-2.

assured them that 70% of their investments would be placed in a segregated account for the benefit of each investor.[22] Both Askew and other Vantage agents affirmed these representations, but plaintiffs' investments were never placed into segregated accounts.[23] Plaintiffs relied on Askew's representation that Vantage Corporation was raising funds for a general partnership structure. This would allow investors to become general partners and to participate in ownership of the company, its intellectual property, and revenue streams going forward.[24]

Plaintiffs report that Askew claimed that Vantage Corporation's systems and strategies had reached a level of maturity and stability to invest significantly large amounts of capital.[25] They further contend Askew represented that Vantage Corporation held 100% ownership of all the proprietary software and systems and intellectual property needed for its business model.[26] Askew and other agents allegedly affirmed these representations after plaintiffs purchased Vantage stock.[27]

Plaintiffs understood their investments would be used primarily as capital for trading with profits resulting from defendants' investment management expertise.[28] Plaintiffs understood they were investing in an existing and profitable strategy and company. However, Vantage Corporation did not own the proprietary software and system or intellectual property needed for the business model.[29] Instead TradeVue,

---

[22] *Id.* at ¶ 36.
[23] *Id.*
[24] *Id.* at ¶ 40.
[25] *Id.* at ¶ 45.
[26] *Id.*
[27] *Id.*
[28] *Id.* at ¶ 47.
[29] *Id.*

5

LLC was the sole owner and Askew was the sole and managing member.[30]

In 2016, Vantage Corporation paid TradeVue $2,447,853 for purported software and intellectual property, with Askew receiving all or a significant portion of the funds.[31] Since making their investments, plaintiffs have been unsuccessful in obtaining information on their roles in Vantage Corporation, which resulted in the retendering of their stocks to defendants.[32]

### III. GOVERNING LAW

#### A. Motion to Dismiss Under 12(b)(6)

In analyzing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a review of Rule 8(a)(2) is necessary. It requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[33] That standard "does not require 'detailed factual allegations,' but . . . demands more than an unadorned, the-defendant-unlawfully-harmed me accusation."[34] Thus, to survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face."[35] The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve disputed facts or decide the merits of the case.[36] Evaluating a motion to dismiss under Rule 12(b)(6) requires the court to accept as true all material allegations of the

---

[30] *Id.* at ¶ 48.
[31] *Id.* at ¶ 49.
[32] *Id.* at ¶¶ 50-52.
[33] Fed. R. Civ. P. 8(a)(2).
[34] *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).
[35] *Id.* (quoting *Twombly,* 550 U.S. at 570); *see also* Fed R. Civ. P. 12(b)(6).
[36] *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).

complaint.[37] "The issue is not whether a plaintiff will ultimately prevail, but whether the complaint is entitled to offer evidence to support the claims."[38] A motion to dismiss may be granted only if, after, "accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to relief."[39]

To survive a motion to dismiss under rule 12(b)(6), the factual allegations must be sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."[40] A plaintiff is obliged "to provide the 'grounds' of his entitle[ment] to relief" beyond "labels and conclusions."[41] Heightened fact pleading is not required: rather "enough facts to state a claim to relief that is plausible on its face" must be alleged.[42] Rejected are unsupported allegations, "bald assertions," or "legal conclusion."[43] Further, "the tenet that a court must accept as true all of the allegations contained in the complaint is

---

[37] *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).
[38] *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (internal quotation marks and citations omitted).
[39] *Maio v. Aetna, Inc.*, 221 F.3d 472, 481-82 (3d Cir. 2000) (internal quotation marks and citations omitted).
[40] *Twombly*, 550 U.S. at 555; *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007).
[41] *Twombly*, 550 U.S. at 555.
[42] *Id.* at 570.
[43] *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice."); *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dimiss.") (citations omitted); *Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 417 (3d Cir. 1997) ("unsupported conclusions and unwarranted inferences" are insufficient.); *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996) (allegations that are "self evidently false" are not accepted.).

inapplicable to legal conclusions."[44] The analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[45] Well-pled facts which only infer the "mere possibility of misconduct" do not show that "the pleader is entitled to relief" under Rule 8(a)(2).[46] "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief."[47]

## IV.  ANALYSIS

Plaintiffs assert defendants' second motion should be denied because it seeks untimely reconsideration of the Court's prior order and violates Federal Rule of Procedure 12(g)(2), which limits successive filing of multiple motions to dismiss.[48] Plaintiffs maintain defendants' "effort to further delay this proceeding, essentially cuts and pastes arguments contained in" their first motion into their second.[49]

Defendants contend plaintiffs' above arguments fail for two reasons. First, plaintiffs introduced additional factual information and new claims, which defendants are entitled to challenge by another Rule 12(b)(6) motion.[50] Second, because this Court originally dismissed plaintiff's federal securities claims on a statute of limitations basis, defendants' present motion raises other defenses not addressed in the prior decision.[51]

---

[44] *Iqbal*, 556 U.S. at 678; see also *Twombly*, 550 U.S. at 555 (A court is "not bound to accept as true a legal conclusion couched as a factual allegation.").
[45] *Iqbal*, 556 U.S. at 679.
[46] *Id.*
[47] *Id.*
[48] Fed. R. Civ. P. 12(g)(2)
[49] D.I. 19 at 2
[50] D.I. 20 at 2.
[51] *Id.*

### A. Federal Securities Claims (Counts I, IV, and VIII)

#### 1. 15 U.S.C. §771 (a)(1)

Plaintiffs claim Askew and Vantage Corporation violated 15 U.S.C. §771 (a)(1) through their sale of unregistered and non-exempt securities for which they are liable to Carter.[52] Askew offered and sold stock to plaintiffs when that stock was neither subject to an effective registration statement pursuant to section 5 of the 1933 Act, 15 U.S.C. § 77(e), nor exempt from registration.[53] On March 10, 2017, plaintiffs executed an agreement with Vantage Corporation, Askew, and Finegold which tolled the statute of limitations for claims related to the sale of unregistered securities from March 9, 2017 until May 9, 2017. Plaintiffs original complaint was filed on April 20, 2017 before this limitations period expired.[54]

Defendants argue Count I should be dismissed for failure to state a claim under Federal Rules of Civil Procedure 12(a)(1) because the investments at issue are exempt from registration requirements.[55] The 1933 Act prohibits the offering or sale of unregistered securities: however, under section 4(a)(2) of the Act, "transactions by an issuer not involving any public offering" are exempt.[56] Defendants state the offerings at issue were only available to accredited investors as outlined in the Term Sheet provided to plaintiffs before their purchase of the stock.[57] Defendants claim plaintiffs fail to plead any factual basis to support their alleged beliefs that general solicitations were made to

---

[52] D.I. 16 at ¶ 54.
[53] *Id.*
[54] *Id.* at ¶ 56; D.I. 16 Ex. A.
[55] D.I. 18 at 5.
[56] *Id.*
[57] *Id.* at 6; D.I. 18 Ex. A.

9

obtain investor funding to unaccredited investors.[58]

Plaintiffs maintain the investments were not subject to a valid exemption. They allege that at least one security purchase was made within the one-year statute of limitations. Specifically, since plaintiffs executed an agreement with Vantage Corporation, Askew, and Finegold on March 10, 2017, tolling the limitations period for claims related to the sale of unregistered securities from March 9, 2017 until May 9, 2017, plaintiffs filing of their original complaint on April 20, 2017, was timely.[59]

Defendants challenge plaintiffs' allegation that this security purchase occurred within one year of filing the complaint. Defendants assert plaintiffs facts are insufficient to demonstrate that any of the investment purchases occurred within one year of discovering the alleged misrepresentations, and thereby fail to satisfy their pleading obligations.

### 2. 15 U.S.C. §771 (a)(2)

Plaintiffs claim defendants violated 15 U.S.C. §771 (a)(2) for their misrepresentation in connection with the issue of a security. They urge Askew is liable for offering to sell and selling securities to them, and for his misleading statements of material facts and/or for his omissions of material facts.[60] Plaintiffs allege Askew misrepresented the status and resources of Vantage Corporation in his communications with them that they owned the software, systems, and intellectual property required for trading activity when it was actually owned by Tradelogix.[61] Additionally, plaintiffs claim

---

[58] *Id.*
[59] D.I. 16 ¶ 56.
[60] *Id.* at ¶ 74.
[61] *Id.* at ¶ 75.

10

that Askew represented that 70% of their investments in Vantage Corporation would be segregated in an account for the benefit of the investors, and that plaintiffs would have a general partnership interest in Vantage Corporation or a subsidiary.[62]

Defendants contend that Count IV fails on the following bases. First, the claims are barred by the statutes of limitations because plaintiffs fail to assert any specific statement which was fraudulent, and fail to allege the time and circumstances of their discovery of any alleged fraudulent statements.[63] Second, there was no public offering.[64] To bring a claim under Federal Rules of Civil Procedure 12(a)(2), a plaintiff must show that the misrepresentation was made with respect to a public offering, not a private sale.[65] Defendants contend plaintiffs cannot allege the investments at issue were part of a public offering, and thereby fail to state a claim. Defendants reference the Term Sheet which expressly states that the shares were only offered to accredited investors.[66] In response, plaintiffs assert this issue, because it is a fact intensive inquiry, cannot be determined before discovery.[67]

### 3. §10b-5 of the 1934 Act and Rule 10b-5

Additionally, plaintiffs allege defendants violated §10b-5 of the 1934 Act. The Private Securities Litigation Reform Act ("PLSRA") imposes heightened pleading requirements on plaintiffs in securities fraud actions. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.

---

[62] *Id.*
[63] D.I. 18 at 8.
[64] *Id.* at 9.
[65] *Id.*; *see also* Fed. R. Civ. P. 12(a)(2)
[66] D.I. 20 at 4.
[67] D.I. 19 at 4.

11

Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."[68] Defendants maintain Count VIII fails because plaintiffs do not state a claim under §10(b) of the Securities Act.[69] Plaintiffs note, however, that consistent with the requirements of the PLSRA, they identified several misleading statements, including the contents of alleged fraudulent statements and when the statements were made.[70] Defendants contend plaintiffs do not allege any misleading facts, and even if when the purported statements were made is sufficiently pled, plaintiffs do not allege where the misrepresentations occurred or why the statements are misleading.[71]

Based on the court's review of the parties' arguments and the claims raised under Counts I, IV, and VIII related to federal security violations, plaintiffs meet the pleading requirements. Defendants' motion to dismiss the federal securities claims is denied.

### 4. Federal Claims for Secondary Liability

Plaintiffs contend Vantage Corporation, Vantage Corporation's subsidiaries, and Finegold are liable for the acts of Askew because of their participation in his acts, under the doctrine of respondeat superior, and/or because each was a control person with respect to Askew.[72] Defendants maintain plaintiffs failed to state a claim for control person liability or respondeat superior under the 1933 Act §12 or 1934 Exchange Act §10(b). Defendants' contend because there is no viable underlying §§12(a) or 10(b)

---

[68] Fed R. Civ P. 9
[69] D.I. 18 at 10.
[70] D.I. 19 at 4.
[71] D.I. 20 at 5.
[72] D.I. 16, *see generally* Counts I-VI and VIII to X.

12

claims, there is no claim for secondary liability.[73] Further, defendants argue, even if plaintiffs stated a claim under these sections, their claims of respondeat superior or control person liability should be dismissed.[74]

The doctrine of respondeat superior holds a principal liable for the agent's wrongful acts committed within the scope of the agency. Plaintiffs allege that Askew was acting within the scope of his position, as an agent on behalf of Vantage Corporation and its subsidiaries, Vantage Advisory, VF(X), and Tradelogix, in falsely representing information during the solicitations and regarding investments of Vantage Corporation stock. Therefore, plaintiffs satisfy the pleading standards, and defendants' motion under Rule 12(b)(6) is denied.

### B. State Securities Claims (Count IX)

#### 1. O.G.C.A. §10-5-50

Plaintiffs allege Askew's false statements of material facts or his omission of material facts operate as fraud and deceit in violation O.G.C.A. §10-5-50.[75] Defendants argue plaintiffs failed to properly plead the statements at issue, including the "time, place and content of the false misrepresentations" to sustain their claim under Georgia law or in accordance with Federal Rules of Civil Procedure 9(b).[76] Defendants further contend plaintiffs inadequately pled all elements of fraud because, the facts alleged are insufficient to identify when, where, and how the purported fraudulent statements were made.

---

[73] D.I. 18 at 14.
[74] Id.
[75] D.I. 16 at ¶ 110.
[76] D.I. 18 at 17.

Conversely, plaintiffs maintain Askew deceived Carter and Scott by affirmatively making false statements of material fact and/or omitting material facts, and/or by substantially participating in creating the alleged misrepresentations, which constitute fraud and deceit.[77] Plaintiffs claim they relied on the misrepresentations and misleading omissions of Askew, which resulted in their purchase of securities issued by Vantage Corporation causing their economic losses.[78]

In their complaint, plaintiffs address the channels in which Askew directly and indirectly communicated his false representations, the content of those misrepresentations, and the time frame in which they relied on his assertions. Plaintiffs sufficiently pled "with particularity the circumstances constituting fraud or mistake" under Federal Rules of Civil Procedure 9(b), and defendants' motion to dismiss on this basis is denied.[79]

### 2. State Claims for Secondary Liability

Plaintiffs contend Vantage Corporation, Vantage Corporation's subsidiaries, and Finegold are liable for the conduct of Askew because they participated in his acts, under the doctrine of respondeat superior, and/or because each was a control person regarding Askew.[80] Defendants maintain plaintiffs fail to state a claim for secondary control person liability or respondeat superior under the O.G.C.A. Similar to their claims for violation of O.C.G.A §§10-5-20 and 10-5-31, plaintiffs allege sufficient facts for secondary liability. As contended by plaintiffs, Askew was acting within the scope of his

---

[77] D.I. 16 at ¶ 110
[78] *Id.* at ¶¶ 114-116.
[79] D.I. 18 at 17.
[80] *Id., see generally.*

position when he transacted business in Georgia as an agent of Vantage Corporation in the selling of shares, although he was not registered as either a securities salesperson or an investment advisor with the Georgia Commissioner of Securities.

### C. Common Law Fraud (Count X)

Plaintiffs assert Askew deliberately concealed material facts for which he had a duty to disclose and made false representations about Vantage Corporation to plaintiffs.[81]  Under Delaware law, plaintiffs must plead:  (1) defendant's false representation, usually of fact, (2) made either with knowledge or belief or with reckless indifference to its falsity, (3) with an intent to induce the plaintiff to act or refrain from acting, (4) the plaintiff's action or inaction resulted from a reasonable reliance on the representation, and (5) such reliance caused damage to the plaintiff.  Furthermore, Federal Rule of Civil Procedure 9(b) requires a plaintiff to plead fraud with "particularity."[82]

Defendants maintain plaintiffs' common law fraud was insufficiently pled for failing to plead with particularity.  Although plaintiff is not subject to the heightened pleading requirements of PLSRA, defendants contend they are entitled to specific identification of the false statements made and where in the documents such statements appear.  Despite defendants' arguments to the contrary, plaintiffs complaint adequately pleads fraud.

Plaintiffs identified the false representations made, and that they were made with the knowledge of their falsity, and with an intent to induce plaintiffs to invest in Vantage

---

[81] *Id.* at ¶ 120.
[82] D.I 18 at 17-18 (*quoting Brown v. Robb,* 583 A.2d 949, 955 (Del. 1990).

Corporation. Plaintiffs maintain Askew misrepresented the status and resources of Vantage Corporation by assuring that they owned the software, systems, and intellectual property required for trading activity of the proposed business model; that 70% of each investment was to be maintained in an investment account for the benefit of each individual; and that plaintiffs' acquired role in Vantage Corporation would be a general partnership interest. Plaintiffs further contend their investments resulted from reasonable reliance on the representations of Askew and Vantage agents, which led to their damages. Plaintiffs allege particular accounts of Askew's misrepresentations on which they relied that resulted in the total payment of $5,000,000 for the purchase of Vantage Corporation stock. Plaintiffs meet the pleading requirements under Federal Rules of Civil Procedure 9(b) and assert a sufficient claim against defendants for common law fraud.

**V.     CONCLUSION**

For the foregoing reasons, it is ORDERED and ADJUDGED that Defendants' motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim upon which relief can be granted (D.I. 17) is DENIED.

Date:  November 8, 2017            /s/ Mary Pat Thynge
                                   Chief U.S. Magistrate Judge