## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

Tara Scott, Individually, and Wilson :
Carter, Individually and as Trustee of :
The Bailey Middleton Carter 2009 Trust, :
The Mary Wilson Carter 2009 Trust, and :
The Wilson M. Carter 1998 Trust, :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀Plaintiffs, :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀⠀⠀⠀⠀v. ⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :⠀⠀⠀ C. A. No. 17-448-MPT
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
Vantage Corporation, Vantage Advisory :
Management, LLC, VF(x) LP, :
Tradelogix, LLC, Brian Askew, and :
Gerald Finegold, :
⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀⠀ :
⠀⠀Defendants. :

## **MEMORANDUM ORDER**

### I. **INTRODUCTION**

On April 20, 2017, Tara Scott ("Scott"), in her individual capacity, and Wilson

Carter ("Carter"), in his individual capacity and as trustee of the Bailey Middleton Carter

2009 Trust (the "Bailey Trust"), the Mary Wilson Carter 2009 Trust (the "Mary Trust"),

and the Wilson M. Carter 1998 Trust (the "Wilson Trust") (collectively, "plaintiffs") filed

this action, pursuant to federal securities laws, state securities laws, and various

common law causes of action, against Vantage Corporation, Vantage Advisory

Management, LLC, VF(x) LP, Tradelogix, LLC, Brian Askew, and Gerald Finegold

(collectively, "defendants"), seeking rescission of defendants' sale of Vantage

Corporation stock to plaintiffs, as well as interest, costs, fees, and compensatory

damages.[1]  Defendants moved to dismiss,[2] which the court granted in part and denied

---

[1] D.I. 1; see also D.I. 13 at 2–6 (detailing the factual background of the allegations).
[2] D.I. 7.

in part on August 15, 2017.[3]  In the briefing on the motion to dismiss, plaintiffs requested leave to amend,[4] which the court granted.[5]  On September 12, 2017, Plaintiffs filed an Amended Complaint.[6]  Thereafter, on September 26, 2017, defendants moved to dismiss the Amended Complaint[7]—the court denied this second motion to dismiss.[8]

On December 8, 2017, defendants answered the Amended Complaint[9] and filed counterclaims alleging various causes of action against plaintiffs.[10]  In January, 2018, Plaintiffs moved to dismiss these counterclaims.[11]  Although this motion to dismiss remains at issue, the court does not resolve the motion in this Memorandum Order.[12]

On February 27, 2018, plaintiffs submitted a proposed Scheduling Order, which the court issued the following day.[13]  According to the Scheduling Order, the deadline for joinder of parties and amendment of pleadings was set retroactively to January 31, 2018.[14]

In March 2018, defendants moved to dismiss Carter's claims in his capacity as trustee of the Bailey Trust and the Mary Trust for lack of subject matter jurisdiction.[15]  According to defendants, neither of these trusts purchased stock in Vantage Corporation.[16]

---

[3] D.I. 13.
[4] D.I. 11 at 15.
[5] D.I. 13 at 14.
[6] D.I. 16.
[7] D.I. 17.
[8] D.I. 21.
[9] D.I. 25.
[10] D.I. 26.
[11] D.I. 33.
[12] The court will resolve this motion separately.
[13] D.I. 44; D.I. 45.
[14] D.I. 45 at 2.
[15] D.I. 61.
[16] D.I. 62 at 1.

On March 28, 2018, plaintiffs opposed defendants' motion, moved for leave to file a proposed Second Amended Complaint,[17] and moved to substitute the individual beneficiaries of the Bailey and Mary Trusts as parties to the litigation.[18] The proposed Second Amended Complaint includes the following new materials: (1) the addition of Bailey M. Carter and Mary W. Carter as individual plaintiffs, including relevant factual allegations;[19] (2) new factual allegations related to non-parties John Carr ("Carr"), Matthew Dwyer III ("Dwyer"), and Michael Hollingsworth;[20] (3) specific factual allegations related to Dwyer's ability to be a "registered representative" for the sale of securities;[21] (4) the inclusion of allegations related to acts by non-parties "Carr and Dwyer" in the claims;[22] (5) a new claim by Mary W. Carter,[23] through her next friend Wilson M. Carter, for sale of securities to a minor;[24] (6) two additional claims for punitive damages and attorneys' fees under Georgia law;[25] and (7) a new securities claim by Scott under Colorado law.[26]

Defendants' motion to dismiss and plaintiffs' motions to substitute and for leave to amend were fully briefed on April 18, 2018 and are presently before the court.[27]

---

[17] D.I. 69.

[18] D.I. 70.

[19] *E.g.*, D.I. 69-2 at ¶¶ 2, 5.

[20] *E.g.*, *id.* at ¶¶ 15–17.

[21] *E.g.*, *id.* at ¶¶ 20–35; *see also* D.I. 69 at 2–3 ("Plaintiffs wish to include additional facts learned thus far in discovery, such as the fact that . . . Dwyer . . . was subject to a permanent ban from the securities industry[.]").

[22] *E.g.*, D.I. 69-2 at ¶ 71–77 (demonstrating the addition of "Carr and Dwyer" to each line of Count I).

[23] The proposed Second Amended Complaint refers to Mary W. Carter as "Mary Wilson." D.I. 69-2 at 28.

[24] D.I. 69-2 at ¶¶ 133–136

[25] *Id.* at ¶¶ 137–141.

[26] *Id.* at ¶¶ 142–143.

[27] D.I. 81, D.I. 82.

## II.    STANDARD OF REVIEW

### A.    Subject Matter Jurisdiction

When jurisdiction is challenged, the party asserting subject matter jurisdiction has the burden of proving its existence.[28]  Under Federal Rule of Civil Procedure 12(b)(1), the court's jurisdiction may be challenged either facially, that is, based on the legal sufficiency of the claim, or factually, based on the sufficiency of jurisdictional facts.[29]  Where there is a facial attack on jurisdiction, the court must accept as true the allegations contained in the complaint.  Dismissal for a facial challenge to jurisdiction is "proper only when the claim 'clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or . . . is wholly insubstantial and frivolous.'"[30]

Where there is a factual attack, the court is not "confine[d] to the allegations in the . . . complaint, but [may] consider affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."[31]  Under that circumstance, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of the jurisdictional claims."[32]

Usually, subject matter jurisdiction is decided at the outset of a case, however, "the truth of jurisdictional allegations need not always be determined with finality at the threshold of litigation."[33]  A party may first establish jurisdiction "'by means of a nonfrivolous assertion of jurisdictional elements and any litigation of a contested subject-matter jurisdictional fact occurs in comparatively summary procedure before a

---

[28] See *Carpet Group Int'l. v. Oriental Rug Importers Ass'n., Inc.*, 227 F.3d 62, 69 (3d Cir. 2000).

[29] 2 MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 1997).

[30] *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1408–09 (3d Cir. 1991) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)).

[31] *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997); *see also Mortenson v. First Fed. Sav. & Loan Ass'n.*, 549 F.2d 884, 891–92 (3d Cir. 1977).

[32] *Carpet Group*, 227 F.3d at 69 (quoting *Mortenson*, 549 F.3d at 891).

[33] MOORE at § 12.30[1].

4

judge alone (as distinct from litigation of the same fact issue as an element of the cause of action, if the claim survives the jurisdictional objection).'"[34]

## B.   Substituting Parties

Rule 17 provides that "[a]n action must be prosecuted in the name of the real party in interest."[35] "The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action."[36] The "protection against dismissal is designed 'to avoid forfeiture and injustice when an understandable mistake has been made in selecting the party in whose name the action should be brought.'"[37] "Thus, [substitution] 'should be applied only to cases in which substitution of the real party in interest is necessary to avoid injustice.'"[38]

## C.   Amending the Complaint

### 1.   Rule 15

Under Rule 15, "[a] party may amend its pleading once as a matter of course within" specified timeframes—otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave."[39] "The court should freely give leave when justice so requires."[40] The Supreme Court has explained that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."[41] "In the

---

[34] *Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.*, 597 F. Supp. 2d 462, 466 (D. Del. 2009) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537–38 (1995)).

[35] Fed. R. Civ. P. 17(a)(1).

[36] *Id.* 17(a)(3).

[37] *Gardner v. State Farm Fire and Cas. Co.*, 544 F.3d 553, 562 (3d Cir. 2008) (citation omitted).

[38] *Id.* (citation omitted).

[39] Fed. R. Civ. P. 15(a)(2).

[40] *Id.*

[41] *Foman v. Davis*, 371 U.S. 178, 182 (1962) (citations omitted).

5

absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'"[42] "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party."[43]

## 2. Rule 16

"If a party moves for leave to amend the pleadings after a deadline imposed by a Scheduling Order, Rule 16 . . . is also implicated."[44] Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent."[45] "After a pleading deadline has passed, the Third Circuit requires a showing of good cause in order to amend."[46] "Good cause" exists if the Schedule "cannot reasonably be met despite the diligence of the party seeking the extension."[47] "'In contrast to Rule 15(a), the good cause standard under Rule 16(b) hinges on diligence of the movant, and not on prejudice to the non-moving party.'"[48]

---

[42] *Id.*

[43] *Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984); *see also Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006); *Cornell & Co. v. Occupational Safety & Health Review Comm'n*, 573 F.2d 820, 823 (3d Cir. 1978).

[44] *ICU Med., Inc. v. RyMed Techs., Inc.*, 674 F. Supp. 2d 574, 577 (D. Del. 2009)

[45] Fed. R. Civ. P. 16(b)(4).

[46] *ICU Med.*, 674 F. Supp. 2d at 577 (citing *E. Minerals & Chems. Co. v. Mahan*, 225 F.3d 330, 340 (3d Cir. 2000)).

[47] Fed. R. Civ. P. 16(b)(4), Advisory Committee Notes to the 1983 Amendments.

[48] *ICU Med.*, 674 F. Supp. 2d at 577–78 (quoting *Roquette Freres v. SPI Pharma. Inc.*, C.A. No. 06–540–GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009)).

## III. DISCUSSION

### A. Motion to Dismiss

Under Rule 12(b)(1), a party may bring a motion to dismiss for lack of subject matter jurisdiction.[49] Standing is a jurisdictional matter; therefore, Rule 12(b)(1) is also appropriate for motions to dismiss for want of standing.[50]

In the case at bar, defendants factually attack subject matter jurisdiction and attach documentary evidence in support of the motion to dismiss.[51] Based upon this undisputed documentary evidence, defendants argue that the Bailey and Mary Trusts lack standing in the case at bar, because neither of these trusts purchased stock in Vantage Corporation.[52] Plaintiffs do not contest these facts and instead explain that "[a]t the time of the filing of the Complaint, and First Amended Complaint, Plaintiffs believed $1 million of Class A shares in Vantage Corporation had been purchased by Wilson Carter in his capacity as Trustee for the Bailey . . . and [] Mary . . .Trust[s.]"[53] Although plaintiffs' combined motion and memorandum of law in support of their motion for leave to amend is also nominally in "opposition" to defendants' motion to dismiss,[54]

---

[49] Fed. R. Civ. P. 12(b)(1).

[50] *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citing *St. Thomas–St. John Hotel & Tourism Ass'n v. Gov't of the U.S. Virgin Islands*, 218 F.3d 232, 240 (3d Cir.2000); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727, 733 (3d Cir.1970)) ("A motion to dismiss for want of standing is [] properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter.").

[51] D.I. 62 at 2–3; D.I. 63-1, exs. A-F; *see supra* notes 31–32.

[52] D.I. 62 at 2–3. Rather, defendants allege that the beneficiaries of these trusts purchased the stock individually. *Id.*; *see also* D.I. 63-1, ex. C at 4 (documenting sale to Bailey M. Carter individually); *id.*, ex. D at 4 (documenting sale to Mary Wilson M. Carter individually); *id.*, ex. E (stock certificate issued to Bailey M. Carter); *id.*, ex. F (stock certificate issued to Mary Wilson M. Carter).

[53] D.I. 69 at 2.

[54] *See id.* ("Plaintiffs' Motion For Leave To File Second Amended Complaint And Memorandum In Support Thereof And In Opposition To Defendants' Motion To Dismiss For Lack Of Standing").

the court is unable to discern any actual opposition to the motion (i.e., a dispute over the factual attack to standing) in the brief.[55]

Therefore, the court concludes that the Bailey and Mary Trusts did not purchase stock in Vantage Corporation and thus lack standing in the case at bar. As such, the court lacks subject matter jurisdiction over the matter involving these two trusts, and dismissal is appropriate under Rule 12(b)(1). For these reasons, the court GRANTS defendants' motion to dismiss.

## B. Motion to Substitute

According to the undisputed documentary evidence, Bailey M. Carter and Mary W. Carter each purchased $500,000 in Vantage Corporation stock.[56] Two months after the deadline to join new parties,[57] plaintiffs moved to substitute Bailey M. Carter and Mary W. Carter, the respective beneficiaries of the Bailey and Mary Trusts, for the trusts themselves as plaintiffs in this action. In addition, the proposed Second Amended Complaint includes, among other new material, new claims related to Mary W. Carter.[58]

Plaintiffs argue that the Advisory Committee notes to the 1966 amendment of Rule 17(a)(3) state that this provision "was designed to prevent penalization when . . . 'determination of the proper party to sue is difficult or when an understandable mistake has been made.'"[59] However, plaintiffs do not rely on this principle in explaining their reasons to substitute and instead contend that "[c]ourts routinely allow for the substitution when doing so would not cause prejudice."[60] In essence, plaintiffs contend

---

[55] Rather, the entirety of plaintiffs' argument is that, if the court grants plaintiffs' requests to substitute parties and amend the First Amended Complaint, that will "render moot [d]efendants' [m]otion to [d]ismiss for [l]ack of [s]tanding[.]" D.I. 69 at 5.

[56] D.I. 63-1, exs. C–F.

[57] And potentially after the relevant statutes of limitation have run. D.I. 78 at 1.

[58] D.I. 69-2 at ¶¶ 133–136.

[59] D.I. 70 at 3 (citing Fed. R. Civ. P. 17, Advisory Committee Notes to 1966 Amendments).

[60] *Id.* (citing *Boarhead Farm Agreement v. Advanced Envt'l. Tech. Corp.*, 381 F. Supp. 2d 427, 433 (E.D. Pa. 2005)). Plaintiffs do not explain why the principles of *Boarhead Farm Agreement* apply to the case at bar.

8

that: (1) the substitution of the parties "is a technical matter [that] does not alter the underlying nature or the relief sought[;]" (2) "[p]laintiffs' mistake as to the real party in interest was reasonable[;]" (3) "the Complaint put Defendants on notice as to the potential claims against them[;]" and (4) "[f]ailure to substitute the real parties in interest would leave potential plaintiffs without a remedy."[61]

Defendants respond that the Advisory Committee notes make it clear that Rule 17(a)(3) "should not be misunderstood or distorted."[62] According to defendants, this is not a simple substitution of a real party in interest, because the "separate and distinct" nature of a trust and its beneficiaries require the addition of new factual allegations to capture communications between defendants and Bailey M. Carter and Mary W. Carter.[63] Defendants argue that this is beyond the scope of Rule 17 case law, which they contend is limited to situations "where 'the change is merely formal and in no way alters the original complaint's factual allegation as to the events or the participants.'"[64] Defendants also argue that, given the documentary evidence, it was not "difficult" for plaintiffs to ascertain *who* had purchased stock in Vantage Corporation. Moreover, defendants note, plaintiffs did not explain any "understandable mistake."[65]

Plaintiffs argue in their reply brief that the proposed "substitution amounts only to an alteration to the names of two of the parties seeking relief."[66] With regards to the alleged mistake, plaintiffs contend that "[i]n the present case, any mistake as to the proper party is partly the result of the conduct of Vantage Corporation[]" because Vantage "issued federal tax Schedule K-1 forms to the Bailey Middleton Carter 2009

---

[61] *Id.* at 3–4 (citations omitted).
[62] D.I. 78 at 3.
[63] *Id.*
[64] *Id.* at 3–4 (citing *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).
[65] *Id.* at 4–5.
[66] D.I. 82 at 2.

Trust and the Mary Wilson Carter 2009 Trust for the tax year 2016, representing that the trusts were shareholders of Vantage Corporation[.]"[67]

Despite plaintiffs' assertions to the contrary, it is wholly apparent from the record that plaintiffs' motion is much more than a simple change to the caption of the case at bar. The extensive proposed amendments demonstrate that Plaintiffs cannot simply substitute Bailey M. Carter for the Bailey Trust and Mary W. Carter for the Mary Trust without adding additional factual allegations relating to acts by and communications with these individuals.[68] In addition, plaintiffs' proposed Second Amended Complaint includes additional factual allegations about Mary W. Carter's status as a minor[69] as well as an additional claim for the sale of securities to a minor that plaintiffs identify as "Mary Wilson."[70] For these reasons alone, substitution under Rule 17(a)(3) is inappropriate.[71]

Also, the court is unconvinced that, at any point in time, it was "difficult" for plaintiffs to ascertain which of the parties had purchased stock in Vantage Corporation—Carter had direct knowledge of who purchased the stock and in what capacity; Bailey M. Carter and Mary W. Carter each purchased the stock individually and signed the relevant stock purchase agreements; and presumably, plaintiffs had access to the relevant documents and information at all times.[72] Moreover, plaintiffs

---

[67] *Id.* at 3 (citing D.I. 82-1, exs. A–B).

[68] *See, e.g.*, D.I. 69-2 at ¶¶ 39–40 (enumerating purchases by Bailey Carter and Mary Carter individually).

[69] *Id.* at ¶ 40 (proposing new language "At the time of said purchase, Mary Carter was thirteen years old and thus was not competent to enter into a contract for the purchase of securities, nor was she an "accredited investor" under Regulation D.")/

[70] *Id.* at ¶¶ 133–136. *See infra* note 73.

[71] *See Advanced Magnetics*, 106 F.3d at 20 ("A Rule 17(a) substitution of plaintiffs should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants.").

[72] The relevant Rule 17(a)(3) case law is replete with fact patterns involving insurance subrogation, statutes of limitations, and questions over the real parties in interest with standing to file suit—cases where a party has initiated suit but after the statute of limitations has run, it becomes apparent that the real party in interest is truly in doubt. *See, e.g.*, *Levinson v. Deupree*, 345 U.S. 648, 651 (1953) (personal

have not adequately explained the alleged "understandable mistake" through which plaintiffs failed to adequately research their claim. In light of the sums of money involved, plaintiffs' alleged "partial" reliance on tax forms provided to the Bailey and Mary Trusts by Vantage Corporation does not begin to explain the source of plaintiffs' confusion in filing suit.[73] In addition, denial of this motion will not lead to dismissal of the action—the case will proceed with Scott and Carter pursuing individual claims as well as Carter as the trustee of the Wilson M. Carter 1988 Trust.[74] For the aforementioned reasons, the court DENIES plaintiffs' motion to substitute.

## C. Motion to Amend

The case at bar has been pending for nearly a year and a half, and in this time, limited discovery has been taken.[75] Under the current Scheduling Order, fact discovery is scheduled to close in two months, on November 12, 2018.[76] So far, plaintiffs have amended their Complaint once[77] and now seek to amend the Complaint yet again, this time proposing numerous factual allegations related to acts by non parties and adding additional causes of action.[78]

Plaintiffs argue that: (1) defendants are not prejudiced, because the proposed Second Amended Complaint "merely substitutes parties and will be 'based on facts

---

representative and statute of limitations); *Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 563 (3d Cir. 2008) (statute of limitations and real party in interest); *Link Aviation, Inc. v. Downs*, 325 F.2d 613, 615 (D.C. Cir. 1963) (real party in interest and statute of limitations); *Green v. Daimler Benz, AG*, 157 F.R.D. 340, 342 (E.D. Pa. 1994) (involving insurance subrogation under Pennsylvania law). Plaintiffs have not identified a single case that supports the premise that, under a similar factual circumstance, it would be "difficult" for plaintiffs to ascertain the proper parties to file suit.

[73] The court agrees with defendants that attorney error is no basis for an "understandable mistake" in this regard. *Hildebrand v. Dentsply Int'l, Inc.*, 264 F.R.D. 192, 199 n.12 (E.D. Pa. 2010) (cited by defendants in D.I. 78 at 5 n.3).

[74] Fed. R. Civ. P. 17.
[75] D.I. 100.
[76] D.I. 107.
[77] D.I. 16.
[78] D.I. 69-2.

11

substantially similar' to the original pleadings[;]"[79] (2) there is no "'bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment[,]'" because "[a]ll the parties proceeded under the mistaken belief" as alleged in the Amended Complaint that "$1 million of . . . stock had been purchased by the [Bailey and Mary] Trusts[;]"[80] (3) amendment is not futile "because it is supported by numerous factual bases and essentially substitutes the correct parties for causes of action that have already been deemed meritorious by surviving motions to dismiss[;]"[81] and (4) under Rule 16(b)(4), plaintiffs identify seven reasons supporting "good cause" for modifying the Scheduling Order and allowing amendment of the Amended Complaint.[82]

Defendants oppose the motion and argue broadly that the proposed Second Amended Complaint is the source of undue delay and prejudice to defendants, many of the proposed amendments are futile, and plaintiffs have failed to demonstrate good cause for violating the Scheduling Order.[83] In support of their brief in opposition, defendants have attached a copy of a complaint filed by plaintiffs against Carr and Dwyer in state court in Georgia (the "Georgia Litigation") documenting that, as of October 2017, plaintiffs were in possession of much of the information related to non parties, Carr and Dwyer, including Dwyer's permanent bar from "acting as a registered representative."[84]

### 1. Material related to Bailey M. Carter and Mary W. Carter

Given the extensive content in the proposed Second Amended Complaint related to Bailey M. Carter and Mary W. Carter, the court's denial of plaintiffs' motion to

---

[79] D.I. 69 at 3 (citations omitted).
[80] *Id.* at 4 (citation omitted).
[81] *Id.* (citation omitted).
[82] *Id.* at 4–5.
[83] D.I. 77.
[84] D.I. 77-1, ex. A at ¶ 13.

substitute renders moot plaintiffs' motion with respect to these amendments.[85] The court discusses the remaining amendments herein.

## 2. The remaining proposed amendments

As discussed above, plaintiffs propose a Second Amended Complaint that, after denial of the motion to substitute, includes the following amendments: (1) factual allegations related to non-party individuals, Carr and Dwyer, including the bar on Dwyer acting as a registered representative in the sale of securities;[86] and (2) causes of action for attorneys' fees,[87] punitive damages,[88] and violations of the Colorado Securities Act.[89]

## 3. Rule 16(b)(4)

Plaintiffs seek to amend the First Amended Complaint after the deadline imposed by the Scheduling Order. In so doing, plaintiffs must first demonstrate good cause to be excused from the Schedule. The "good cause" standard under Rule 16(b)(4) hinges on, in the case at bar, the diligence of plaintiffs.[90] Specifically, plaintiffs must demonstrate that the Schedule "cannot reasonably be met despite the diligence of [plaintiffs.]"[91]

Plaintiffs identify "seven reasons"[92] why there is good cause to amend the First Amended Complaint.

> Here, good cause exists for amendment of the complaint, because 1) the Scheduling Order was not signed by the Court until February 28, 2018, 2) discovery has only recently commenced, and the parties have not yet responded to their

---

[85] In addition, these proposed amendments would be futile. To be sure, these proposed amendments include allegations relating to Bailey M. Carter and Mary W. Carter as individuals, including "Count Eleven" for "Sale of Securities to a Minor in Her Individual Capacity (Asserted by Mary Wilson). D.I. 69-2 at ¶¶ 133–136 at 28.

[86] D.I. 69-2 at ¶¶ 20–27.

[87] *Id.* at ¶¶ 137–138.

[88] *Id.* at ¶¶ 139–141.

[89] *Id.* at ¶¶ 142–143.

[90] *ICU Med.*, 674 F. Supp. 2d at 577–78 (quoting *Roquette Freres v. SPI Pharma. Inc.*, C.A. No. 06–540–GMS, 2009 WL 1444835, at *4 (D. Del. May 21, 2009)).

[91] *See supra* note 47.

[92] D.I. 81 at 8.

13

respective first discovery requests, 3) both sides initially believed the Bailey Middleton Carter 2009 Trust and the Mary Wilson Carter 2009 Trust were the purchasers of certain of the securities in question, and Defendants filed a counterclaim against the Trusts (D.I. 26), 4) Vantage Corporation issued Schedule K-1 s to the Trusts on March 28, 201 7, representing that each Trust had a stock ownership interest in Vantage Corporation, and received reportable income from Vantage Corporation, 5) Defendants waited nearly one year before notifying the Trusts that they were not, in fact, shareholders in Vantage Corporation, 6) Defendants did not raise this issue in their first two motions to dismiss, and 7) Plaintiffs acted immediately to seek the requested relief when they became aware of the true facts concerning the identity of the purchasers, one of whom is a minor.[93]

Defendants argue that plaintiffs "knew or should have known, about facts underlying their new allegations and claims at the time they filed their original complaint and their First Amended Complaint."[94]

The court agrees with defendants that plaintiffs have failed to demonstrate good cause why, despite plaintiffs' diligence, the Schedule cannot be met. First, reasons "3"– "7" of plaintiffs' "seven reasons" relate to the portion of the motion that is moot, namely the discovery of the proper purchasers of Vantage Corporation stock—none of these five "reasons" discusses any of the other new matter (e.g., "Carr and Dwyer," the Colorado cause of action, or the additional remedies under Georgia law).[95]

_____
[93] D.I. 69 at 5.
[94] D.I. 77 at 16.
[95] In addition, reason "3" is a characterization that "both sides believed" when, so far in this action, which has included two motions to dismiss filed by defendants, defendants have had to take plaintiffs' allegations as true. Therefore, the court does not draw the inference that "both sides" held a similar belief based upon defendants' motions to dismiss or even defendants' Counterclaims. Reasons "4" through "6" are aspects of defendants' subject matter jurisdiction argument, which defendants may raise "at any time" and were under no legal obligation to raise earlier in this litigation. Thus, the court does not interpret these reasons to support good cause or to demonstrate diligence on plaintiffs' part. Finally, reason "7" is that plaintiffs "acted immediately" when so required by the Rules to respond to defendants' motion to dismiss for lack of subject matter jurisdiction. Fed. R. Civ. P. 12. Plaintiffs' brief in opposition was essentially that "the requested relief [] will render moot [d]efendants'

14

Second, of the remaining two reasons, neither demonstrates that the Schedule could not be met, despite diligence by plaintiffs. Reason "1" is that "the Scheduling Order was not signed by the [c]ourt until February 28, 2018," which appears to suggest delay on the part of the court, but plaintiffs fail to note that *plaintiffs* filed the proposed document with the court *the day before*, on February 27, 2018, and had agreed to the retroactive January 31, 2018 deadline for the joinder of parties and amendment of the pleadings at that time.[96] In essence, plaintiffs filed papers in February 2018 stating that the January 31, 2018 deadline could be (and ostensibly was) met. A month later, plaintiffs changed their tune when it became apparent that two of the plaintiffs lacked standing to sue. Reason "2" is that "discovery has only recently commenced"[97] and that no discovery had been taken as of March 28, 2018. However, in the same brief, plaintiffs stated that they "wish to include additional facts learned thus far in discovery[]"[98] to broadly include numerous new factual allegations that mirror plaintiffs' October 2017 filing in the Georgia Litigation.[99] In this regard, plaintiffs statements simply are not credible. Moreover, plaintiffs do not demonstrate to the court how, in the case at bar, the Schedule could not be met, *despite plaintiffs* diligence in discovering the facts that they now seek to include in the Second Amended Complaint.

Third, many of the facts alleged in the proposed Second Amended Complaint were known by plaintiffs months, if not well over a year, before they filed their motion for leave.[100] For these reasons, plaintiffs have not met their burden under Rule 16 to show

---

[m]otion to [d]ismiss[.]" D.I. 69 at 5. Had defendants not filed the motion, *there is no evidence in the record* that plaintiffs had imminent plans to request leave to amend or that plaintiffs were otherwise diligent in continuing to research the factual allegations plaintiffs now seek leave to add to the proposed Second Amended Complaint. D.I. 77-1, ex. A.
[96] D.I. 44.
[97] D.I. 69 at 5.
[98] D.I. 69 at 2.
[99] D.I. 69-2.
[100] For example, as to the new factual allegations related to "Carr and Dwyer," including Carr's securities ban, which plaintiffs contend were "additional facts learned

15

good cause to be excused from the Schedule; therefore, leave to amend is not appropriate.

### 4. Rule 15

The court has denied plaintiffs' motion to substitute and has denied plaintiffs' motion for failure to show good cause under Rule 16. As a result, the court declines to reach the question of whether leave to amend is appropriate under Rule 15.

### CONCLUSION

For the reasons discussed herein, defendants' motion to dismiss for lack of subject matter jurisdiction (D.I. 61) is granted, namely, Wilson Carter as trustee of the Bailey Middleton Carter 2009 Trust and Wilson Carter as trustee of the Mary Wilson Carter 2009 Trust are hereby dismissed with prejudice as plaintiffs in this action. Also for the reasons discussed, plaintiffs' motion to substitute (D.I. 70) is denied, and plaintiffs' motion for leave to amend (D.I. 69) is denied.

An appropriate order shall follow.

Dated: September 13, 2018

Chief U.S. Magistrate Judge

---

thus far in discovery," D.I. 69 at 2, defendants have shown that plaintiffs were in possession of this specific information in October 2017, some five months before their motion for leave to amend. D.I. 77 at 6–7; D.I. 77-1, ex A. In light of plaintiffs' first-hand knowledge of their interactions with defendants, plaintiffs' contention that new facts were "just beginning to come to light as a result of the limited discovery that has been produced thus far[,]" D.I. 81 at 7, is not persuasive. In addition, there is no explanation for how plaintiffs were diligent in seeking discovery into the remedies under Georgia law, D.I. 69-2 at ¶¶ 137–141, or why the facts known to plaintiffs were insufficient to have raised these claims earlier. Moreover, the First Amended Complaint already alleged that Scott was a Colorado resident and had been solicited there. D.I. 16 at ¶¶ 1, 15, 22. In light of the sparse (if not futile) allegations under Colorado law in the proposed Second Amended Complaint, D.I. 69-2 at ¶¶ 142–143, it is unclear what new information plaintiffs' alleged diligence uncovered that enabled them to make the allegation at this time.