IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARA SCOTT and WILSON CARTER, INDIVIDUALLY AND AS TRUSTEE OF THE BAILEY MIDDLETON CARTER 2009 TRUST, THE MARY WILSON CARTER 2009 TRUST, and THE WILSON M. CARTER 1988 TRUST, | : : : : : : : | |
| Plaintiffs, | : : | |
| v. | : : | C. A. No. 17-448-MPT |
| VANTAGE CORPORATION, VANTAGE ADVISORY MANAGEMENT, LLC, VF (X) LP, TRADELOGIX, LLC, BRIAN ASKEW, and GERALD FINEGOLD, | : : : : : | |
| Defendants. | : : | |
| VANTAGE CORPORATION, BRIAN ASKEW, and GERALD FINEGOLD, | : : : | |
| Counterclaim Plaintiffs, | : : | |
| v. | : : | |
| TARA SCOTT and WILSON CARTER, INDIVIDUALLY AND AS TRUSTEE OF THE BAILEY MIDDLETON CARTER 2009 TRUST, THE MARY WILSON CARTER 2009 TRUST, and THE WILSON M. CARTER 1988 TRUST, | : : : : : : : | |
| Counterclaim Defendants. | : | |

## **MEMORANDUM ORDER**

The case at bar concerns a securities action filed on April 20, 2017, by Tara Scott ("Scott"), in her individual capacity, and Wilson Carter ("Carter"), in his individual capacity and as Trustee of the Bailey Middleton Carter 2009 Trust, the Mary Wilson Carter 2009 Trust, and the Wilson M. Carter 1988 Trust (collectively, the "Trusts")

(collectively, with Scott and Carter, "plaintiffs").[1] Presently before the court is Plaintiffs' Motion for Sanctions Relating to the Depositions of Gerald Finegold (the "Sanctions Motion").[2] For the reasons discussed below, the court grants plaintiffs' motion in part.

Plaintiffs move for sanctions, including the fees and expenses incurred in conducting the depositions of Gerald Finegold taken on October 25, 2018 (the "First Finegold Deposition") and on February 1, 2019 (the "Second Finegold Deposition"). Plaintiffs seek relief pursuant to this Court's Order of November 21, 2018[3] and FEDERAL RULES OF CIVIL PROCEDURE 30(d)(2) and 37.[4]

Plaintiffs conducted the First Finegold Deposition on October 25, 2108.[5] On November 15, 2018, plaintiffs sent a letter to the court describing Finegold's evasive and dissembling testimony, including over thirty pages of deposition testimony refusing to provide his understanding of the term "accredited investor," and seeking attorneys' fees and sanctions for his improper conduct.[6] During the November 21, 2018 discovery dispute teleconference, the court noted it reviewed the First Finegold Deposition transcript and expressed dismay that despite Finegold's experience in the financial industry he testified to a lack of knowledge of such common concepts as "income" and

---

[1] D.I. 1 (Complaint); D.I. 16 (First Amended Complaint ("FAC")).
[2] D.I. 221.
[3] D.I. 141.
[4] D.I. 221 at 1-2. Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 30(d)(2): "[t]he court may impose an appropriate sanction–including the reasonable expenses and attorney's fees incurred by any party–on a person who impedes, delays, or frustrates the fair examination of the deponent." "[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer or respond." FED. R. CIV. P. 37(4).
[5] D.I. 221 at 2.
[6] D.I. 138 at 2-3.

2

"accredited investors."[7] The court flatly warned:

> [F]or [Finegold's] next deposition if I see this same type of colloquy going on from a man who apparently was in this type of industry that he should have had some understanding, at least what he understood an accredited investor was or what the heck income meant on forms that he was signing or were used in his corporation or used in his position, *I will sanction him*. I don't want this to continue is what I'm saying.[8]

The court's prior admonitions apparently went unheeded during the Second Finegold Deposition taken on February 1, 2019. Plaintiffs report Finegold's "continued evasiveness, refusal to respond to questions, and practice of answering questions with rote, memorized responses followed up with his refusal to answer," and that he proceeded to obfuscate and delay the deposition by repeatedly asking the court reporter to read back, sometimes multiple times, over sixty questions before providing deficient responses.[9]

Then, *after* summary judgment motions were filed, Finegold submitted an untimely errata sheet "clarifying" his testimony from page 106 lines 17-18 of the First Finegold Deposition by replacing his answer "I don't know that I had an understanding between January 1 in 2016 and December 31 of 2016" in response to the question "[i]n 2016, between January 1, 2016 and December 31, 2016, what was your understanding of the income requirements in order to be considered an accredited investor," with:

> In 2016, my then knowledge of accredited status as it pertains to the income requirement was that an investor was required to earn 200,000 of

---

[7] 11/21/2018 Tr. at 57:7-58:12. Finegold's history in the financial industry, and the titles he held at Vantage Corporation, are not in dispute. As the court has discussed evidence relating to those topics elsewhere in the docket, *see, e.g.*, D.I. 135, 231, it will not do so here.

[8] 11/21/2018 Tr. at 5813-21 (emphasis added).

[9] D.I. 221 at 3.

income as an individual and 300,000 of income if the investor was as joint owner like husband and wife and these requirements were for the 2 previous years prior to the investment. My current knowledge of accredit status is the same. I currently have no different view of what the income requirements were in 2016.[10]

Defendants response to the Sanctions Motion is the an understated acknowledgment that "[t]here is no denying that the Finegold Deposition was not ideal."[11] Rather than dispute the gist of plaintiffs' arguments, they blame *plaintiffs'* experienced counsel for sabotaging the deposition by asking repetitive, unnecessary, and confusing lines of questions to an inexperienced deponent.[12]

Presumably leading with the best support for their opposition, defendants call out the following questions as examples of "endless repetition of already answered questions[.]"[13]

Q. Next line item says cost staff NRC. What does that mean?

A. I don't know.

Q. You have no idea what NRC means?

    MS. TANNER: Objection to the form of the question.

A. I don't–I didn't produce this document. I don't–it was produced a long time ago or video if it was a video, and I don't know what was meant by that.[14]

Contrary to defendants' assertion that counsel had established and confirmed Mr. Finegold's lack of knowledge of the meaning of NRC,"[15] when plaintiffs' counsel

---

[10] D.I. 221-1, ex. D at errata sheet 2.
[11] D.I. 226 at 1 (footnote omitted).
[12] *Id.* at 1-8.
[13] *Id.* at 2-4.
[14] *Id.* at 2 (citing Finegold Dep., p. 401, l. 20, p. 402, l. 4).
[15] *Id.*

4

attempted to determine Finegold's understanding of the term, he answered with reference to not creating the document himself.

Plaintiffs' counsel then attempted to refocus Finegold on the meaning of the term "NRC," not who produced the document in which the term was used.

Q. Sitting here today you have no idea what the term "NRC" refers to?

    MS. TANNER: Objection to the form of the question.

A. I would be speculating.

Q. Tell me your best understanding. Have you ever heard that term before, NRC?

A. I would be speculating.

Q. Not asking you to speculate, sir. I'm just asking have you ever heard the term NRC used before?

A. I don't recall in the normal course of my life someone saying to me NRC and having any specific meaning.

Q. So sitting here today in your capacity as the former president of Vantage Corporation, you have no idea what the term "NRC" means?

    MS. TANNER: Objection to the form of the question, mischaracterizes his testimony.

A. As I've stated multiple times, I didn't produce this document, I don't know what is included in that nomenclature what they meant by it, so I really would be speculating beyond that.

Q. Going to try one more time. Sir, sitting here today, do you have any idea what the term "NRC" means in the context of the operations of Vantage Corporation?

    MS. TANNER: Objection to the form of the question.

A. Sitting here today I have no–I cannot say what was meant by that line item.

Q. Not asking what was meant by that line item. Just put the document

aside. I'm just asking you based upon your knowledge as the president of Vantage Corporation, do you have any idea what the term "NRC" means in the context of the operations of Vantage Corporation?

\* \* \*

A. NRC has no meaning in the context of the operations of Vantage Corporation.[16]

What defendants characterizes as extreme repetition of question clearly shows plaintiffs' counsel attempting to solicit a direct response to a direct question as to the meaning of the term "NCR" being met with statements and answers either not answering the question and/or answering a question that was not asked.

Questions about documents were similarly met with non-answers stating the need to speculate and/or that Finegold did not author the document in question. One such example defendants cite as an improper tactic of plaintiffs' counsel inquiring about documents Finegold neither authored nor used is the question, "Does that indicate to you this is on a cash basis?" to which Finegold responded, "I would guess. I didn't produce this documents. It says this was a document that was produced by Herb Miller. And it was produced with the focus–the intent of it was to make it easy for the SEC to understand what the use funds were."[17] On the one hand, Finegold indicates he would have to "guess" because the document was authored by someone else, on the other hand, however, he states the "intent" of the document. The remainder of defendants' transcript citation fail to support the implication that Finegold's deposition was "less than ideal" because of *plaintiffs'* counsel's improper questioning.

---

[16] *Id.* at 2-3 (Finegold Dep., p. 402, l. 4 – p. 404, 1. 10).
[17] *Id.* at 5 (citing Finegold Dep., p. 229, l. 22- p. 230 1, 3).

Defendants' argument that Finegold's "careful" responses were the result of his inexperience at being deposed by an opposing counsel with decades of experience[18] is without merit. For instance, it strains credulity to accept the argument that Finegold's inexperience as a deponent rendered him unable to recall his understanding in early 2016 what an "accredited investor" was, but suddenly achieving definitional clarity in an errata sheet submitted months later, and after summary judgment briefing had begun.

Defendants' final argument, and appropriately so given its lack of persuasiveness, is that, "[t]hough the deposition did contain difficult moments, large amounts of meaningful testimony were elicited."[19] Defendants note "[w]hen they moved for summary judgment, Plaintiffs found 'support' in at least 35 places in the Finegold Deposition. In opposing Defendants' motions, Plaintiffs cited (in two briefs) to over 20 items."[20] The implication is that if plaintiffs believed Finegold's deposition was as bad as suggested, plaintiffs should have simply not affirmatively moved for summary judgment and acquiesced in summary judgment in defendants' favor. This warrants no comment other than the court's review of the transcript from the First Finegold Deposition persuaded it to order Finegold submit to another *full seven hours* of deposition.

With regard to the appropriate sanction, the court agrees with defendants to the extent that plaintiffs are not entitled to receive payments for all costs and fees associated with both depositions. The court agrees that plaintiffs would have incurred

---

[18] *Id.* a 7-8.
[19] *Id.* at 8-9.
[20] *Id.* at 9.

costs and fees related to the First Finegold Deposition in any event. Plaintiffs are however, entitled to the attorney's fees and court reporting costs for the Second Finegold Deposition as reported in Exhibits A and B to plaintiffs' motion.[21]

Plaintiffs also request Finegold's errata sheet should be stricken from the transcript of his deposition as being untimely and improper.[22]

The parties submitted their motions and briefing on summary judgment February 19, 2019.[23] After granting defendants' unopposed motion to extend the deadline to file answering briefs,[24] those briefs were filed on March 12, 2019.[25] Reply briefs were filed on March 19, 2019.[26] An April 9, 2019 e-mail from the court reporter for the First Finegold Deposition to plaintiffs' counsel attached Finegold's "Completed Errata" sheet.[27] The errata sheet was notarized on March 15, 2019.[28]

The First Finegold Deposition took place on October 25, 2108. A copy of the transcript of that deposition was attached to plaintiffs' November 15, 2018 letter to the court addressing certain discovery disputes, including Finegold's alleged misconduct during that deposition,[29] verifying the parties receipt of the transcript by at least that date. Finegold's March 15, 2019 notarization of the errata sheet was thus four months

---

[21] D.I. 221-1, exs. A (listing $10,132.00 in attorney's fees), B (listing $3,207.98 in court reporting fees). Defendants do not dispute the accuracy or reasonableness of either of these dollar amounts.
[22] D.I. 230 at 4-5.
[23] D.I. 156,157; 160, 173; 161, 164.
[24] D.I. 177, 191.
[25] D.I. 194, 193, 192.
[26] D.I. 207, 209.
[27] D.I. 221-1, ex. D.
[28] *Id.*
[29] D.I. 138-1, ex. E.

after the latest date the parties were in receipt of the transcript, and more than three months after Finegold's complained of evasiveness and/or non-responsiveness during the deposition were discussed during the November 21, 2018 discovery dispute teleconference. Finegold's submission of the errata sheet was thus clearly contrary to the procedural requirements of FEDERAL RULE OF CIVIL PROCEDURE 30(e):

> **(e) Review by the Witness; Changes.**
>
> > **(1) *Review; Statement of Changes.*** On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
> >
> > > **(A)** to review the transcript or recording; and
> > >
> > > **(B)** if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.
> >
> > **(2) *Changes Indicated in the Officer's Certificate.*** The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.[30]

"The procedural requirements of Rule 30(e) are clear and mandatory."[31] "'At least part of Rule 30 could not be more straightforward: a deponent has *30 days* after notification by the court reporter to review the deposition transcript *and* to sign a statement setting forth any changes and the reasons for those changes."[32]

---

[30] FED. R. CIV. P. 37(e).
[31] *EBC, Inc. v Clark Bldg. Sys., Inc.,* 618 F.3d 253, 265 (3d Cir. 2010); *id.* at 366 ("We emphasize that the Rule 30(e) thirty-day clock begins to run when the party is notified by the court reporter that transcript is available for review, *not* when the party or deponent physically receives the transcript from the court reporter.") (emphasis in original) (citation omitted).
[32] *Id.* (emphasis in original) (quoting *Welsh v. R.W. Bradford Transp.*, 231 F.R.D. 297, 298–99 (N.D. Ill.2005)).

The Third Circuit noted, "courts retain the authority to enforce the amendment window strictly, [but] leave the matter to their sound discretion to determine if and when extension of the time limit is appropriate."[33] Here, there is no reason to exercise that discretion. Finegold's submitted an errata sheet long after the thirty-day deadline, and *after* the parties had submitted summary judgment motions and supporting briefs. No explanation was apparently given to plaintiffs for the extended delay at the time, and none is offered in connection with the instant motion. Thus, the court grants plaintiffs' request and strikes Finegold's errata sheet from the transcript of his deposition.

## ORDER

For the reasons discussed, plaintiffs motion for sanctions D.I. 221 relating to the depositions of Gerald Finegold is GRANTED in part and DENIED in part.

It is ORDERED, ADJUDGED and DECREED that:

1. within thirty (30) days of the date of this Memorandum Order, Finegold shall pay the sum of $10,132.00, as attorney's fees for preparing for and conducting the Second Finegold Deposition, and court reporter's fees for the Second Finegold Deposition in the amount of $3,207.98, for a total of $13,339.98;

2. Finegold's errata sheet, notarized on March 15, 2019 is STRICKEN from the transcript of his deposition.

June 24, 2019      /s/ Mary Pat Thynge
                   Chief U.S. Magistrate Judge

---

[33] *Id.* at 266 n.12.