**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| TARA SCOTT and WILSON CARTER, INDIVIDUALLY AND AS TRUSTEE OF THE BAILEY MIDDLETON CARTER 2009 TRUST, THE MARY WILSON CARTER 2009 TRUST, and THE WILSON M. CARTER 1988 TRUST, | ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) C. A. No. 17-448-MPT ) |
| VANTAGE CORPORATION, VANTAGE ADVISORY MANAGEMENT, LLC, VF (X) LP, TRADELOGIX, LLC, BRIAN ASKEW, and GERALD FINEGOLD, | ) ) ) ) ) |
| Defendants. | ) ) |
| VANTAGE CORPORATION, BRIAN ASKEW, and GERALD FINEGOLD, | ) ) ) |
| Counterclaim Plaintiffs, | ) ) |
| v. | ) ) |
| TARA SCOTT and WILSON CARTER, INDIVIDUALLY AND AS TRUSTEE OF THE BAILEY MIDDLETON CARTER 2009 TRUST, THE MARY WILSON CARTER 2009 TRUST, and THE WILSON M. CARTER 1988 TRUST, | ) ) ) ) ) ) |
| Counterclaim Defendants. | ) ) |

**MEMORANDUM OPINION**

## I.   INTRODUCTION

On April 20, 2017, Wilson Carter ("Carter") and Tara Scott ("Scott") (collectively,

"plaintiffs") brought this action against Brian Askew ("Askew") and Gerald Finegold

("Finegold") (collectively, "defendants") alleging breaches of federal and state securities laws, fiduciary duties, and accounting obligations.[1]  On September 12, 2017, plaintiffs filed a First Amended Complaint ("FAC") alleging additional breaches of federal and state securities laws.[2]  Defendants answered and asserted various counterclaims.[3]

On June 17, 2019, the court issued a Memorandum Opinion ("Memorandum") and Judgment granting summary judgment in favor of defendants on all federal securities claims.[4]  Finegold subsequently requested the court perform "the mandatory Rule 11 analysis of 15 U.S.C. § 78u–4(c)" related to attorneys' fees.[5]  The court "declined to make a ruling" on the issue until after trial on the remaining claims, and reiterated that intention at the pretrial conference.[6]

The remaining claims were tried before a jury November 12-18, 2019, and the jury rendered its verdict on November 19, 2019.[7]  The Clerk of the Court entered a

---

[1] D.I. 1.  Carter also serves as Trustee of three trusts that are named as plaintiffs:  the Bailey Middleton Carter 2009 Trust, the Mary Wilson Carter 2009 Trust, and the Wilson M. Carter 1988 Trust.  D.I. 1 ¶ 3; D.I. 16 ¶ 3.  Vantage Corporation and three of its subsidiaries, Vantage Advisory Management, LLC, VF(X) LP, and Tradelogix, LLC., were also named as defendants.  D.I. 1 ¶ 4-7; D.I. 16 ¶ 4-7.

[2] D.I. 16.

[3] D.I. 26.

[4] D.I. 231; D.I. 232.  The federal securities claims were:  Violation of Section 12 of The 1933 Act, 15 U.S.C. § 77*l*, For The Sale of Unregistered and Non-Exempt Securities (Count I); Violation By All Defendants of Section 12 of The 1933 Act, 15 U.S.C. § 77*l*(a)(2), Because of Misrepresentations in Connection with Issue of a Security (Count IV); Violation of §10b-5 of the 1934 Act and Rule 10b-5 (Securities Fraud) Against All Defendants (Count VIII).  D.I. 16.  On August 16, 2019, in response to the parties' motions for clarification and reargument (D.I. 239; D.I. 240), the court clarified that the Judgment granted Finegold's motion for summary judgment in its entirety on all claims brought against him by plaintiffs.  D.I. 255.

[5] D.I. 252.

[6] D.I. 262 at 5-6; D.I. 269 at 11:14-24.

[7] D.I. 287.

Judgment consistent with the verdict on December 5, 2019.[8]  The following day, defendants filed a Notice of the court's obligation to review the record of the federal securities fraud claims for potential FEDERAL RULE OF CIVIL PROCEDURE 11(b) violations as mandated by the Private Securities Litigation Reform Act of 1995 ("PSLRA").[9]  On January 6, 2020, Askew and Finegold filed Notices of Appeal of the Judgment "and all orders and rulings (or lack thereof) leading up to and subsumed within that judgment and ancillary to it" and reserved their rights to pursue attorneys' fees pursuant to 15 U.S.C. §§78u-4(c)(1), (2), and (3) to the extent the Judgment was intended to be final and appealable.[10]  The parties disagreed as to the effect of their pending appeals on the court's authority to decide the attorneys' fees issue and, following briefing, the court determined it retained jurisdiction.[11]  On February 5, 2021, the United States Court of Appeals for the Third Circuit affirmed the prior orders and rulings in the case and noted this court's intent to rule on the attorneys' fees issue.[12]

Presently before the court are defendants' requests for the award of attorneys' fees and expenses they, and Vantage Corporation on their behalf, incurred throughout this litigation against Carter, Scott, S. Lawrence Polk ("Polk"), and Eversheds Sutherland LLP ("Eversheds Sutherland").[13]

---

[8] D.I. 293.
[9] D.I. 294.
[10] D.I. 295; D.I. 296.  Carter and Scott filed a Notice of Cross Appeal on January 21, 2020.  D.I. 300.
[11] D.I. 309 at 4.
[12] *Scott v. Vantage Corp.*, No. 20-1054, 2021 WL 406179 (3d Cir. Feb. 5, 2021).
[13] D.I. 313 (Askew); D.I. 314 (Finegold).  Additional briefing is found at D.I. 324 (Carter and Scott Opposition), D.I. 328 (Finegold Reply), and D.I. 330 (Askew Reply).

## II.    BACKGROUND

### A.    Parties

Askew and Finegold were each directors of Vantage Corporation[14] and Finegold was also the President, Vice President, and Treasurer of Vantage Corporation.[15]  Carter and Scott invested $3,000,000 and $2,000,000, respectively, in a 2016 Vantage Corporation stock offering ("the 2016 Stock Offering") between January and March of that year.[16]  Polk was admitted *pro hac vice* to represent both Scott and Carter in this lawsuit, is a member of the State Bar of Georgia, and partner at the law firm Eversheds Sutherland.[17]

### B.    Facts

The court's findings relevant to plaintiffs' federal securities claims, as detailed in its June 17, 2019 Memorandum, are summarized below.

#### 1.    The Court Granted Summary Judgment That Finegold Was Not a Control Person

Before turning to plaintiffs' specific federal securities law claims, the court notes each claim against Finegold alleged he was liable "for the acts of Askew because

---

[14] D.I. 16 ¶¶ 8-9; D.I. 25 ¶¶ 8-9; D.I. 158 at A74, 15:21-23; *id.* at A251,13:2-5.  Vantage Corporation is a Delaware corporation maintaining a principal office in Alpharetta, Georgia.  D.I. 16 ¶ 4.  Vantage Corporation's three subsidiaries are Delaware entities. D.I. 16 ¶¶ 5-7.  On May 4, 2018, Vantage Corporation and its subsidiaries filed voluntary Chapter 11 bankruptcy petitions in the Northern District of Georgia Bankruptcy Court, which automatically stayed the proceedings against those entities in this court.  *See* D.I. 88; D.I. 96.

[15] D.I. 16 ¶¶ 8-9; D.I. 25 ¶¶ 8-9; D.I. 192 at 5 (citing D.I. 158, A88 at 70:16-21).

[16] *Id.* ¶¶ 16-26.  Although Vantage Corporation allowed Scott to sell some of her shares later in 2016, the court determined she maintained standing to assert claims against Vantage Corporation because she continued to own Vantage Corporation stock.  D.I. 231 at 19-20.

[17] D.I. 325 ¶¶ 1-2.

[Finegold] participated in these acts . . . or because he was a control person with respect to Askew."[18]  Plaintiffs' control person theory relied on allegations related to Finegold's position as President, Vice President, and Treasurer of Vantage Corporation,[19] preparation of materials given to potential investors, meeting with potential investors dating back to 2014,[20] review of financial statements provided to the company's external accountants,[21] and signing Vantage Corporation's Form D claiming exempt status for the 2016 Stock Offering.[22]  The court rejected plaintiffs' control person argument, finding that "status as an officer, director or shareholder of a corporation, absent more is not enough to trigger liability as a 'controlling person' under securities law."[23]  Moreover, plaintiffs failed to submit evidence showing Finegold met with potential investors for the 2016 Stock Offering or that he reviewed any documents given to the potential investors.[24]  Further, the court found that review of financial statements provided to a company's accountants and signing a Form D insufficient to establish control for securities law purposes.[25]

The court also found no evidence that Finegold culpably participated in Askew's alleged fraudulent acts.[26]  Accordingly, the court granted Finegold summary judgment

---

[18] D.I. 16 ¶¶ 60, 78, 108.  Plaintiffs also alleged Finegold was liable based on a *respondeat superior* theory but did not make any supporting arguments.  *Id.*; D.I. 231 at 9.
[19] *Id.* (citing D.I. 158, A88 at 70:16-21).
[20]  *Id.* (citing D.I. 158, A264 at 67:19-68:24; A387 at 380:19-22).
[21] *Id.* (citing D.I. 158, A255 at 31:13-32:25; A348 at 385:20-386:5; A365 at 453:3-10).
[22] *Id.* (citing D.I. 159 at A651-A655).
[23] D.I. 231 at 10 (citations omitted).
[24] *Id.* at 11-12.
[25] *Id.* at 10.
[26] *Id.* at 11.

on all plaintiffs' claims against him.[27]

> ## 2. The Court Granted Summary Judgment to Defendants on Count I (Violation of Section 12 of the 1933 Act, 15 U.S.C. § 77*l*, For the Sale of Unregistered and Non-Exempt Securities)

Plaintiffs alleged Askew violated Section 12(a)(1) of the Securities Act of 1933[28] (the "1933 Act") and was "liable to Carter because Askew offered and sold stock of Vantage Corporation to Plaintiffs when that stock was neither subject to an effective registration statement pursuant to section 5 of the 1933 Act, 15 U.S.C. § 77e, nor exempt from registration."[29]  In March 2016, Carter purchased 476.962702 Class A shares in Vantage Corporation for $1,000,000.[30]  The shares were not registered under the 1933 Act or state securities laws.[31]

Plaintiffs argued Askew sold Vantage Corporation securities that failed to qualify for Rule 506(b)[32] registration, largely because he sold the stock to two allegedly unsophisticated and unaccredited investors without providing sufficient disclosures.[33] One of the allegedly unaccredited investors was Carter's daughter, Mary Wilson Carter ("Mary"), who purchased $500,000 of Vantage Corporation stock in February 2016 when she was thirteen years old.[34]  Carter had presented Mary with the relevant documents, which represented she had the capacity to purchase stock only available to

---

[27] *Id.*; D.I. 232; D.I. 255.
[28] 15 U.S.C. § 77*l*(a)(1).
[29] D.I. 16 ¶ 54.
[30] *Id.* ¶ 55.
[31] D.I. 162 at A1547 (defendants' response to plaintiffs' first requests for admission); *see also* D.I. 159 at A651–A655 (Vantage Corp. Form D filing); D.I. 196-1, Ex. 67.
[32] 17 C.F.R. § 230.506(b).
[33] D.I. 157 at 18-19.
[34] D.I. 158 at A30, 113:8–16; D.I. 171 at 75 of 214–78 of 214.

accredited investors.[35]  The court rejected plaintiffs' arguments premised on Mary's incapacity, finding defendants reasonably believed she was accredited at the time of investment.[36]

Matthew Dwyer ("Dwyer") was alleged to be the other unaccredited investor based on his failure to meet the financial requirements for accreditation.[37]  The court acknowledged Dwyer was likely not accredited at the time of his investment, but found defendants reasonably relied on his representations and that they complied with Regulation D requirements.[38]  Plaintiffs also contended Dwyer was a "bad actor" under Rule 506(d) due to his permanent FINRA ban.[39]  Pursuant to Rule 506(d), registration exemptions are inapplicable if an individual subject to particular regulatory sanctions "has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers in connection with such sale of securities."[40]  The court found the evidence showed Dwyer was not compensated for soliciting investors in the 2016 Stock Offering.[41]

The court also found that Vantage Corporation's stock offering was a private

---

[35] D.I. 164 at 5.
[36] D.I. 231 at 19-20; *see also* 17 C.F.R. § 230.501(a) ("Accredited investor shall mean any person who comes within any of the following categories, or who *the issuer reasonably believes* comes within any of the following categories[.]") (emphasis added). Plaintiffs did not identify any record evidence demonstrating that Vantage Corporation, Askew, or Finegold knew that Mary was a minor at the time.  D.I. 231 at 20.  The court did not reach the issue as to whether Mary was actually unaccredited because Carter's active involvement and defendants' reasonable belief sufficient to settle the issue.  *Id.* at 19-20.
[37] D.I. 157 at 8,18-19.
[38] D.I. 231 at 20-23.
[39] D.I. 231 at 26-27.
[40] 17 C.F.R. § 230.506(d).
[41] D.I. 231 at 27-28.

offering exempted from registration under the 1933 Act.[42]  In doing so, the court noted plaintiffs' argument to the contrary was "incoherent" and that they failed to present any evidence to support their broad allegation that it was a public offering.[43]  For these reasons, the court granted defendants' motion for summary judgment on Count I.[44]

> ### 3. The Court Granted Summary Judgment to Defendants on Count IV (Violation by All Defendants of Section 12 of The 1933 Act, 15 U.S.C. § 77*l*(a)(2), Because of Misrepresentations in Connection with Issue of a Security)

Plaintiffs alleged defendants violated Section 12(a)(1) of the 1933 Act because Askew purportedly made misrepresentations of material facts or omissions in communications to plaintiffs regarding:  Vantage Corporation's resources, how plaintiffs' funds would be allocated in accounts, and whether plaintiffs would hold general partnership interests in Vantage Corporation or its subsidiaries.[45]  Section 12(a)(1) proscribes misrepresentations of material facts or omissions in oral communications or prospectuses regarding securities.[46]  However, Section 12(a)(1) does not apply to the private sale of securities.[47]  Because the court determined Vantage Corporation's 2016 Stock Offering was a private offering--as discussed in its Count I analysis--it granted summary judgment in favor of defendants.[48]

---

[42] *Id.* at 25-26.

[43] *Id.* at 23-26.

[44] *Id.* at 23.

[45] D.I. 16 ¶¶ 74-79.

[46] 15 U.S.C. § 77*l*(a)(2).

[47] *Luminent Mortg. Capital, Inc. v. Merrill Lynch & Co.*, 652 F. Supp. 2d 576, 596 (E.D. Pa. 2009) (citing *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995)).

[48] D.I. 231 at 32.

**4.    The Court Granted Summary Judgment to Defendants on Count VIII (Violation of §10b-5 of the 1934 Act and Rule 10b-5) (Securities Fraud)**

Federal securities claims under SEC Rule 10b-5 claim require proof of six

elements:

> (1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; 4) reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as "transaction causation"; (5) economic loss; and (6) "loss causation," i.e., a causal connection between the material misrepresentation and the loss.[49]

Plaintiffs alleged Askew deceived and defrauded plaintiffs "by making untrue

statements of material facts and/or omitting to state material facts necessary to make

the statements not misleading, and/or substantially participated in the creation of the

alleged misrepresentations" in violation federal securities laws.[50]  Specifically, plaintiffs

alleged:

> Askew falsely represented (1) the status and resources of Vantage Corporation, assuring Plaintiffs that Vantage Corporation had ownership of software, systems, and intellectual property needed for the trading activity of the proposed business model; (2) the intended use of the investments, assuring Plaintiffs that 70% of each investment in Vantage Corporation was to be invested in an investment account for the benefit of each individual; (3) Plaintiffs' acquired role in Vantage Corporation, assuring Plaintiffs that they would have a general partnership interest.[51]

Plaintiffs maintained "Askew acted with the requisite intent to deceive and

defraud and with knowledge of, or reckless disregard, for the truth."[52]

Defendants argued plaintiffs failed to prove reasonable reliance or loss

---

[49] *McCabe v. Ernst & Young, LLP*, 494 F.33 418, 424 (3d Cir. 2007) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).
[50] D.I. 16 ¶ 100.
[51] *Id.* ¶ 102.
[52] *Id.* ¶¶ 103-04.

causation.[53]  Specifically, defendants challenged five types of misrepresentations upon which plaintiffs allegedly reasonably relied:  (1) the use of investor funds;[54] (2) predicted trading returns;[55] (3) the investment documents' representation of the investment structure plaintiffs understood would be in place;[56] (4) segregation of a portion of plaintiffs' funds in separate accounts;[57] and (5) Vantage Corporation's 100% ownership of the software and intellectual property needed for its business model.[58]  Defendants also argued plaintiffs' investment losses were "self-inflicted" and that plaintiffs failed to "articulate how any purported misrepresentations caused a decline in the value of their investment."[59]

> The court found:

> The plaintiffs' [securities] fraud-based claims rest on whether they reasonably relied on purported misrepresentations that were a proximate cause of their loss. The court finds that as a matter of law, they did not reasonably rely on any purported misrepresentations, and those purported misrepresentations were not the proximate cause of plaintiffs' loss.[60]

The court explained the evidence supported defendants' challenges to the five types of alleged misrepresentations and noted plaintiffs' failures to adequately reply to those rebuttals.[61]  The court further stated there was no support in the record for plaintiffs' contention that defendants made "serial misrepresentations" that caused them

---

[53] D.I. 164 at 21.
[54] *Id.* at 23.
[55] *Id.* at 23-24.
[56] *Id.* at 24-25.
[57] *Id.* at 25.
[58] *Id.* at 26.
[59] *Id.*
[60] D.I. 231 at 27.
[61] *Id.* at 39-41.

to purchase Vantage Corporation stock and the value of the stock to plummet.[62]  The

court also found plaintiffs failed to show a genuine issue of material fact as to loss

causation.[63]  Finally, the court noted the damaging effect of an e-mail Carter sent to

counsel on November 16, 2017, which stated:

> All--I am told the SEC has completed their investigation and notified Vantage
> they are dropping their inquiries and the case.
>
> I need some sort of signal or opinion that the course of action has merit. I find the
> situation of paying massive legal fees vs. defendants with no assets to be
> untenable.  *The strategy was to file these complaints to force a settlement* . . . I
> don't foresee this outcome.  please help me understand what our current strategy
> is?[64]

For these reasons, the court granted defendants' motion for summary judgment

on Count VIII.[65]

## III.    GOVERNING LAW

Pursuant to FEDERAL RULE OF CIVIL PROCEDURE 11(b), when presenting a

complaint to a court an attorney or party certifies that based on a reasonable inquiry:

(1) the complaint is not presented for an "improper purpose, such as to harass, cause

unnecessary delay, or needlessly increase the cost of litigation"; (2) the claims and legal

contentions are warranted by existing law or by an objectively "nonfrivolous argument"

for revising existing law; and (3) factual contentions are supported by evidence.[66]  The

---

[62] *Id.* at 39.  This includes that there was no evidentiary support for the contention that
Vantage Corporation did not own or have access to the software necessary for its
business model at the time plaintiffs invested.

[63] *Id.* at 41-42.

[64] *Id.* at 42; D.I. 319-1, Ex. L-4 at Scott_Carter_010134 (e-mail from Carter to Peter
Anderson, Larry Polk, Amanda Griffin, Mimi Scott (Nov. 16, 2017)).

[65] D.I. 231 at 42.

[66] FED. R. CIV. P. 11(b); *see also McGown v. Silverman & Borenstein, PLLC*, No. 13-CV-
748-RGA/MPT, 2014 WL 545963, at *3 (D. Del. Feb. 7, 2014), *report and
recommendation adopted*, No. 13-CV-748-RGA/MPT, 2014 WL 1623773 (D. Del. Apr.

standard for evaluating Rule 11(b) violations is whether--*at the time the complaint was submitted*--the filing was objectively "reasonable[] under the circumstances."[67]

For private actions arising from federal securities laws, the PSLRA compels courts, upon final adjudication of an action, to review the record to ensure each party and attorney complied with each requirement of Rule 11(b) in all complaints, responsive pleadings, and dispositive motions.[68]  Where a mandatory PSLRA review is triggered, the PSLRA requires courts to impose sanctions on attorneys or parties if they violated Rule 11(b).[69]  Specifically, courts must impose sanctions for:  "(i) failure of any responsive pleading or dispositive motion to comply with any requirement of Rule 11(b)" or "(ii) substantial failure of any complaint to comply with any requirement of Rule 11(b)[.]"[70]  When Rule 11 is violated, the PSLRA carries a presumption in favor of awarding reasonable attorneys' fees and expenses to the opposing party.[71]  However, this presumption may be overcome if the violation of Rule (11)(b) was *de minimis* or if the award of attorneys' fees and expenses would inflict an unreasonable burden on the violating party.[72]  "The express congressional purpose of the PSLRA provision was to

---

23, 2014).

[67] FED. R. CIV. P. 11 advisory committee's note.  The Advisory Committee Notes mention the standard had previously been one of good faith, and that it expected the more "stringent" objective reasonableness standard to produce Rule 11 violations in "a greater range of circumstances."

[68] 15 U.S.C. § 78u–4(c)(1).

[69] § 78u–4(c)(1).  Courts generally have discretion to impose sanctions on a party or counsel for violating Rule 11, including payment of attorneys' fees and expenses to the prevailing party.  FED. R. CIV. P. 11(c)(2).

[70] § 78u–4(c).  "[A] substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive."  *Gurary v. Nu-Tech Bio-Med, Inc.*, 303 F.3d 212, 222 (2d Cir. 2002).

[71] § 78u–4(c)(3)(A).

[72] § 78u–4(c)(3)(B).  If the violating party overcomes the presumption of attorneys' fees

increase the frequency of Rule 11 sanctions in the securities context, and thus tilt the 'balance' toward greater deterrence of frivolous securities claims."[73]

## IV.    DISCUSSION

### A.    Preliminary Issues

#### 1.    Rule 11 Analysis Is Warranted for Attorneys' Fees Incurred for Defenses of Askew and Finegold

Plaintiffs argue the court should not conduct a Rule 11 analysis under the PSLRA for the claims against Vantage Corporation--as distinguished from the claims against Askew and Finegold--because no "final adjudication" has occurred as to those claims.[74] Plaintiffs note that after filing Chapter 11 bankruptcies, Vantage Corporation and its subsidiaries filed a Suggestion of Bankruptcy in this court in May 2018, which automatically stayed the proceedings against those entities.[75]  "Accordingly, plaintiffs' claims against Vantage were not adjudicated, and a Rule 11 inquiry is not required as to claims against Vantage."[76]

It is of no consequence whether plaintiffs' claims against Vantage Corporation were finally adjudicated because defendants are not seeking to recover fees related to Vantage Corporation's defense.  Rather, defendants seek attorneys' fees that Vantage Corporation paid for the *defenses of Finegold and Askew*.[77]  Because Vantage Corporation assigned to defendants its right to recover the attorneys' fees it incurred

---

and expenses, the court "shall award the sanctions that the court deems appropriate pursuant to Rule 11[.]"  § 78u–4(c)(3)(C).

[73] *ATSI Commun., Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009).  The PSLRA "gives teeth to Rule 11[.]"  H.R. CONF. REP. NO. 104-369, at 39.

[74] D.I. 324 at 16-17 (quoting 15 U.S.C. § 78u–4(c)(1)).

[75] *Id.* at 17; *see also* D.I. 88; D.I. 96.

[76] D.I. 324 at 17.

[77] D.I. 328 at 4; D.I. 330 at 2; *see also* D.I. 324 at 16-17.

defending Askew and Finegold--rather than defending itself--in this matter, the court will proceed with the PSLRA-mandated Rule 11 analysis for those attorneys' fees.[78]

### 2.   Trial Jury Verdict on Defendants' Breach of Contract Counterclaim Is Not Dispositive

Plaintiffs contend that because the trial jury did not allow defendants to recover attorneys' fees in their breach of contract counterclaim against plaintiffs, an award of attorneys' fees under this Rule 11 analysis would be inappropriate.[79]  The court disagrees.  As defendants note:  (1) the court explicitly excluded the federal securities law attorneys' fees issue from trial;[80] and (2) the jury's verdict regarding the *defendants'* breach of contract counterclaim *against plaintiffs* does not foreclose sanctions for *plaintiffs'* federal securities law claims *against defendants* under the PSLRA-mandated Rule 11 analysis, particularly since Rule 11 determinations are left to the courts rather than juries.[81]

### B.   Askew and Finegold's Joint Legal Brief

Defendants filed a joint brief discussing the law supporting the imposition of sanctions ("Joint Brief") against plaintiffs.[82]  Defendants assert they are "each legally entitled to *all* reasonable attorneys' fees and other expenses incurred in this action."[83] They note this court has "applied the well accepted standard that Rule 11 sanctions are issued when a complaint is presented for an improper purpose and the claims are

---

[78] D.I. 328 at 4; D.I. 330 at 2.
[79] D.I. 324 at 1.
[80] D.I. 328 at 3.
[81] D.I. 330 at 1.
[82] D.I. 318.
[83] *Id.* at 1 (emphasis in original).

neither legally warranted nor factually supported."[84]  Defendants emphasize Congress

enacted the PSLRA to deter abusive litigation in the federal securities law context, as

Rule 11 had not sufficiently done so standing alone.[85]  They argue Carter admitted the

frivolous nature of this lawsuit in his e-mail to counsel stating the "strategy . . . [was] to

file these complaints to force a settlement."[86]  Defendants maintain "[t]his is a case

where pleadings were filed 'not in pursuit of any legal cause of action genuinely

believed by plaintiff or his counsel to exist at the time their documents were filed, but

rather for the purpose of coercing a settlement from defendants.'"[87]  While not explicitly

arguing plaintiffs failed to conduct an objectively reasonable inquiry prior to filing their

complaint, such argument is inferred by defendants' emphasis on the issue in their cited

case law.[88]  Defendants also filed separate briefs discussing how these principles apply

to their individual arguments that they are each independently entitled to sanctions.[89]

### C.    Plaintiffs Conducted an Objectively Reasonable Inquiry

The case law cited in the Joint Brief primarily addresses Rule 11's objectionably

reasonable inquiry requirement and implicitly suggests plaintiffs did not conduct a

reasonable investigation.[90]  To comply with Rule 11, "counsel must conduct 'a

---

[84] *Id.* (citing *McGown v. Silverman & Borenstein, PLLC*, No. 13-CV-748-RGA/MPT, 2014 WL 545903, at *3 (D. Del. Feb. 7, 2014), *report and recommendation adopted*, No. 13-CV-748-RGA/MPT, 2014 WL 1623773 (D. Del. Apr. 23, 2014)).

[85] *Id.* at 2-3; *see also* H.R. CONF. REP. 104-369 (1995).  Defendants note that in a previous case, Polk highlighted Congress's intent to impose Rule 11 sanctions more frequently in federal securities cases by enacting the PSLRA.  D.I. 318 at 1-2 (citing Defs.' Mem. in Supp. of Their Mot. for Rule 11 Sanctions at *9, Oct. 27, 2009, *Zisholtz v. SunTrust Banks Inc.*, No. 1:08-CV-1287-TWT (N.D. Ga. Sept. 24, 2009)).

[86] *Id.* at 2 (citing D.I. 319-1, Ex. L-4 at Scott_Carter_010134).

[87] *Id.* at 5 (quoting *Elster v. Alexander*, 122 F.R.D. 593, 604 (N.D. Ga. 1988)).

[88] *Id.* at 3-5.

[89] D.I. 313; D.I. 314.

[90] D.I. 324 at 5.

reasonable investigation of the facts and a normally competent level of legal research to support the presentation.'"[91]  Rule 11 "imposes on counsel a duty to look before leaping and may be seen as a litigation version of the familiar railroad crossing admonition to 'stop, look, and listen.'"[92]  Reasonableness should be assessed as of the time plaintiffs filed the complaint.[93]  Factors for evaluating reasonableness in this context include:  the amount of time available to plaintiffs and counsel investigation, the degree to which counsel must rely on a client for the underlying factual information, and the plausibility of the legal position advanced.[94]  Importantly, merely failing to prevail in a litigation or failing to survive summary judgment does not automatically trigger Rule 11 sanctions.[95]

Plaintiffs argue the reasonableness of the investigation they and their counsel conducted is demonstrated where, prior to filing their complaint, "Plaintiffs' counsel interviewed Plaintiffs, reviewed the offering materials provided by Vantage to Plaintiffs, available agreements, correspondence between Defendants and Plaintiffs, the publically [sic] available Form D, and other publically [sic] available information regarding Vantage's agents[.]"[96]  They assert Polk also reviewed other documents

---

[91] *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988) (quoting *Lieb v. Topstone Industries, Inc.*, 788 F.2d 151, 157 (3d Cir. 1986)).

[92] *Lieb*, 788 F.2d at 157.

[93] *Pensiero*, 847 F.2d at 94 ("The correct Rule 11 inquiry is 'whether, at the time he filed the complaint, counsel ... *could* reasonably have argued in support' of his legal theory." (quoting *Teamsters Loc. Union No. 430 v. Cement Exp., Inc.,* 841 F.2d 66, 70 (3d Cir. 1988)).

[94] Fed. R. Civ. P. 11 advisory committee's note.  The Advisory Committee Notes also include a fourth factor applicable to the current case:  "whether he depended on forwarding counsel or another member of the bar."  *See id.*  At least one court has also considered an additional factor:  the complexity of the relevant legal and factual issues.  *Pensiero*, 847 F.2d at 95.

[95] *Simmerman v. Corino*, 27 F.3d 58, 62 (3d Cir. 1994); *Pensiero*, 847 F.2d at 94*; Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 483 (3d Cir. 1987).

[96] D.I. 324 at 5; D.I. 324 ¶¶ 5-10, 17, 30.  Polk avers that prior to filing, he reviewed the

provided by defendants but these efforts were hindered by their refusal to cooperate in

the discovery process.[97]  Polk also contacted third parties and defendants' counsel for

additional information.[98]  Plaintiffs assert these actions amounted to an objectively

reasonably investigation, especially because Polk "was operating under a severe time

constraint" due to statute of limitations concerns.[99]

      The court finds plaintiffs conducted an objectively reasonable inquiry.  In *Garr v.*

*U.S. Healthcare, Inc.*, a pre-PSLRA securities case involving allegedly false and

misleading statements made by a healthcare company, the Third Circuit sanctioned two

attorneys under Rule 11.[100]  The court found the two attorneys failed to conduct a

reasonable inquiry by solely relying on a *Wall Street Journal* article and information

received from another attorney, Malone, who worked at a different law firm and had filed

a similar complaint.[101]  The defendants also moved for sanctions against Malone, but

the court found Malone *did* conduct an objectively reasonable investigation by reading

the *Wall Street Journal* article as well as "obtaining a representative sampling of stories

regarding [the company] . . . , [a] report giving a great deal of financial information

---

following materials:  (1) Vantage Corporation's offering materials and SEC filings,
including the Form D; (2) documents provided by plaintiffs reflecting their investments in
Vantage Corporation; (3) previous counsel's correspondence with plaintiffs and Vantage
Corporation representatives; (4) investor letters that Askew and Finegold sent to
plaintiffs, which included financial information related to Vantage Corporation; (5) a
Certified Public Accountant's forensic accounting of the financial information Vantage
Corporation provided; and (6) Schedule K-1 tax reporting forms that Vantage
Corporation sent to investors.  D.I. 325 ¶¶ 5-20.
[97] D.I. 324 at 5-6; D.I. 325 ¶¶ 21-28.
[98] D.I. 324 at 5-7.  Polk maintains he contacted three other investors in Vantage
Corporation (or their counsel) who described "nearly identical" allegations against
Askew and Finegold as plaintiffs asserted.  D.I. 325 ¶ 19.
[99] D.I. 324 at 8-9; D.I. 325 ¶ 18.
[100] 22 F.3d 1274 (3d Cir. 1994).
[101] *Id.* at 1280-81.

regarding [the company] . . . [and] also considered financial ratios[,] and examined forms filed with the Securities and Exchange Commission."[102]  The court suggested that if the two other attorneys had reviewed the same materials as Malone--instead of fully depending on Malone's inquiry--they may have avoided sanctions.[103]  Here, Polk conducted the inquiry himself without relying on the research of outside attorneys. Polk's conduct is therefore more akin to Malone than the two sanctioned attorneys in *Garr*.

Although not a securities case, the discussion of reasonable inquiries under Rule 11 in *Vehicle Operation Technologies LLC v. American Honda Motor Co., Inc.*[104] is informative.  There, the court imposed Rule 11 sanctions on the plaintiff in a patent infringement case involving the use of a "dedicated display" in cars largely because the plaintiff's counsel failed to conduct an objectively reasonable pre-suit investigation of the defendant car-makers' owner's manuals; if they had, "it would have been evident that the accused vehicles did not meet the [patent's] display limitation[.]"[105]  In the present case, Polk's pre-complaint investigation was certainly more robust than in *Vehicle Operation Technologies*.

Defendants also point to other cases in which sanctions were imposed for lack of objective reasonable inquiry, but each are distinguishable from plaintiffs' inquiry due to additional facts not present here.[106]  Although the court tends to agree with defendants

---

[102] *Id.* at 80.
[103] *Id.*
[104] 67 F. Supp. 3d 637 (D. Del. 2014).
[105] *Vehicle Operation Technologies LLC v. American Honda Motor Co., Inc.*, 67 F. Supp. 3d 637, 651-52 (D. Del. 2014).
[106] *See, e.g.*, *CMG Worldwide, Inc. v. Glaser*, 92 F. Supp. 3d 839 (S.D. Ind. 2015) (imposing sanctions under the PSLRA because plaintiffs clearly had no standing to

that plaintiffs were not hindered by a "severe time constraint" in bringing the action,[107] this single factor does not overcome the overall adequacy of plaintiffs' investigation under the circumstances.

Thus, the court finds plaintiffs conducted an objectively reasonable inquiry for Rule 11 purposes prior to filing a complaint.

For the remaining issues, the court addresses Askew's and Finegold's arguments separately based on their respective briefs.

### D. Askew's Arguments

#### 1. Improper Purpose

Askew argues plaintiffs brought this action for the improper purpose of coercing him into returning their investment capital under Rule 11(b)(1): "the record shows that this action was filed by plaintiffs to seek an immediate and full refund of their investment, rather than any genuine belief that the causes of action or factual allegations had any merit."[108]

---

bring the securities actions, which would have been obvious with a cursory review of applicable securities law); *Bender v. Jordan*, 679 F. Supp. 2d 85 (D.D.C. 2010) (sanctioning *defendants* under the PSLRA for false denials in their answers to complaint); *In re Australia & New Zealand Banking Grp. Ltd. Sec. Litig.*, 712 F. Supp. 2d 255 (S.D.N.Y. 2010) (relying on one particular frivolous allegation, which was central to the plaintiff's theory of liability and which plaintiff's counsel later conceded was unfounded due to plaintiff's misreading of a news article, to impose sanctions under the PSLRA).

[107] D.I. 324 at 5; D.I. 328 at 3-4.

[108] D.I. 313 at 1-3. Askew points to Carter's testimony admitting he sought the return of capital to make a separate real estate transaction, and from Scott indicating she did not even know whether her investment had declined in value at the time she filed suit. *Id.* at 2; D.I. 313-1, Ex. A at 89, 138; *Id.*, Ex. B at 968-69. Askew also argues plaintiffs used the threat of an SEC investigation to coerce him into returning their capital, and that the cases plaintiffs cite related to Rule 11 improper purposes are irrelevant because they were not "decided under the PSLRA's statutory Rule 11 framework." D.I. 313 at 2; D.I. 330 at 2.

Plaintiffs deny bringing the action for improper purposes, arguing they and their counsel "reasonably believed legally and factually supported causes of action existed that warranted the return of Plaintiffs' investment, among other damages."[109]  Plaintiffs argue their lawsuit was not frivolous simply because they sought a return of capital and attempted to recover the capital before filing the lawsuit.[110]  Plaintiffs emphasize Carter's e-mail to counsel discussing the "strategy . . . to force a settlement" does not show an improper purpose, but rather merely demonstrates his hope to settle.[111] Plaintiffs acknowledge defendants warned them about potential sanctions but contend this warning did not obligate them to abandon their claims.[112]

Carter's e-mail indicating plaintiffs' "strategy was to file these complaints to force a settlement" is problematic.[113]  Plaintiffs correctly emphasize that seeking a return of their investments, or attempting to secure a settlement, does not necessarily violate Rule 11.[114]  When considering the PSLRA's purpose of deterring abusive securities litigation, however, and recognizing Carter's e-mail specifically states the purpose *of filing the complaint* was to force a settlement, it is impossible to dismiss the damaging effect of the e-mail.

Consequently, the court finds plaintiffs filed the complaint for an improper purpose and violated Rule 11(b)(1).

---

[109] D.I. 324 at 2.
[110] *Id.* at 2-3.
[111] *Id.* at 3; D.I. 319-1, Ex. L-4 at Scott_Carter_010134.
[112] D.I. 324 at 3.
[113] D.I. 319-1, Ex. L-4 at Scott_Carter_010134.
[114] D.I. 324 at 3 (citing *Vollmer v. Selden*, 350 F.3d 656, 660 (7th Cir. 2003); *Sussman v. Bank of Israel*, 56 F.3d 450, 459 (2d Cir. 1995)).

### 2.     Evidentiary Support of Factual Contentions

Askew argues plaintiffs and Polk knew each of the federal securities claims against him were not factually supported, in violation of Rule 11(b)(3).[115]  Further, Askew argues plaintiffs' cited case law was not decided under the PLSRA's mandatory Rule 11 framework and therefore does not reflect Congress's intent to more effectively deter frivolous securities litigation.[116]

Plaintiffs argue they believed the facts supported each of their causes of action.[117]  They maintain Askew "relies exclusively on [the court's] summary judgment order" to support the Rule 11 motion and correctly note summary judgment rulings in favor of defendants do not alone establish Rule 11 violations.[118]

### (a)     Counts I (Sale of Unregistered Securities Claims) & IV (Misrepresentation Claims)

For Count I (Sale of Unregistered Securities Claims), Askew emphasizes the court's summary judgment analysis, which recognized the documentation provided to potential investors made it clear the offering was only available to accredited investors and the shares were unregistered.[119]  Askew argues Carter's involvement in his minor daughter's unaccredited investment in Vantage Corporation is critical to this Rule 11 analysis because plaintiffs attempted to use Carter's daughter's investment to "invalidate the entire private offering."[120]  Askew also contends plaintiffs failed to identify

---

[115] D.I. 313 at 3.

[116] D.I. 330 at 2-3.

[117] D.I. 324 at 8-9.

[118] *Id.* (citing *Howe v. Litwack*, 579 F. App'x 110, 115 (3d Cir. 2014); *Rabin v. Nasdaq Omx Phlx LLC*, No. CV 15-551, 2016 WL 3914031, at *2 (E.D. Pa. July 20, 2016)).

[119] D.I. 313 at 7; D.I. 231 at 16-18.

[120] D.I. 313 at 4.

any evidence showing he or others at Vantage Corporation knew Dwyer was unaccredited at the time of his investment.[121]  For similar reasons, Askew maintains Count IV was equally unsupported by evidence; Section 12 of the 1933 Act only applies to public offerings, and this court found Vantage Corporation's offering was private.[122]

Plaintiffs assert they reasonably believed Vantage Corporation made a securities offering to at least two unaccredited investors.[123]  "That this Court ultimately concluded that Vantage reasonably believed these two investors were accredited does not negate Plaintiffs' evidentiary support that Vantage did in fact to sell to unaccredited investors."[124]  Plaintiffs make essentially the same argument to support their Count IV misrepresentation claims under Section 12 of the 1933 Act.[125]

In *Oxford Asset Management, Ltd. v. Jaharis*, after a publicly traded drug company's stock price plummeted, plaintiffs filed a class action complaint asserting various securities violations based on allegedly misleading statements and omissions in the company's press releases and filings.[126]  The district court found the plaintiffs provided essentially no evidentiary support for these claims.[127]  In upholding the award of attorneys' fees to the defendants, the Eleventh Circuit agreed with the district court that plaintiffs' counsel conducted an objectively reasonable investigation, but that "after such investigation a reasonable attorney would have realized that there was no evidentiary support for any of the allegations in the complaint and that such support was

---

[121] *Id.*
[122] *Id.* at 5.
[123] *Id.* at 9.
[124] *Id.*
[125] D.I. 324 at 9-10.
[126] 297 F.3d 1182, 1185-87 (11th Cir. 2002).
[127] *Id.* at 1188-94.

unlikely to be unearthed by further investigation or discovery."[128]  Therefore, plaintiffs were "deliberately indifferent to the lack of evidentiary support" for the claims, which were "objectively frivolous" under Rule 11(b)(3).[129]

Plaintiffs' Counts I and IV are analogous to the claims in *Oxford Asset Management*.  Although plaintiffs conducted an objectively reasonable inquiry prior to filing a complaint, that investigation should have revealed the lack of factual support for the allegation that the relevant Vantage Corporation offering was public.  The documentation provided to plaintiffs as prospective investors clearly identified the offering was private and for accredited investors only.[130]  Only with the benefit of hindsight and discovery did plaintiffs identify Dwyer and Carter's minor daughter as potentially unaccredited investors.  The FAC generally alleged Vantage Corporation sold stock to unaccredited investors without identifying any specific individuals.[131]  In fact, Dwyer's name is completely absent in the FAC.[132]  Further, Carter's participation in his minor daughter's investment--including having her sign a document indicating she was accredited--does not help plaintiffs' argument.

Thus, the court finds plaintiffs violated Rule 11 with respect to Counts I and IV.

### (b)    Count VIII (Securities Fraud Claims)

For Count VIII, Askew argues "the uncontroverted evidence shows that plaintiffs sought the return of their investment (at full price) for reasons having nothing to do with

---

[128] *Id.* at 1194.
[129] *Id.* at 1194-95.
[130] D.I. 231 at 15-16.
[131] D.I. 16 ¶ 13; D.I. 231 at 18.
[132] D.I. 16.  Mary's name is only recited with respect to plaintiff Mary Wilson Carter 2009 Trust.  *Id.*

alleged fraud[.]"[133]  One element required in SEC Rule 10b-5 securities fraud claims is plaintiffs' reasonable reliance on the relevant misrepresentations;[134] Askew notes the court found plaintiffs failed to present any evidence showing they reasonably relied on defendants' alleged misrepresentations.[135]  He contends this demonstrates the frivolousness of plaintiffs' complaint, particularly where defendants' evidence rebutted any alleged misrepresentations and plaintiffs provided no direct evidence in response.[136]  Askew also notes the court found no evidence the alleged misrepresentations proximately caused plaintiffs' investment losses; the only tangentially-related evidence was one letter from *Finegold* dated about a year *after* plaintiffs invested in Vantage Corporation.[137]

Plaintiffs argue they reasonably relied on representations made by Askew--which they reasonably believed were misrepresentations--when they purchased Vantage Corporation stock.[138]  "Askew only contends that Plaintiffs' allegations of reliance and loss causation are frivolous; accordingly, Askew concedes that Plaintiffs had a reasonable basis to allege:  (1) these representations were in fact made to Plaintiffs; and (2) these representations were false."[139]  Plaintiffs first assert they reasonably relied on Askew's representation that Vantage Corporation owned 100% of the proprietary

---

[133] D.I. 313 at 6.  Askew also argues:  (1) plaintiffs lack of evidence supporting Count V (breach of fiduciary duty) and Count VI (negligence) supports his argument; and (2) that this court permitted one state law claim to proceed to trial does not affect the Rule 11 analysis as it pertains to the federal securities claims.  *Id.*

[134] *McCabe v. Ernst & Young, LLP*, 494 F.33 418, 424 (3d Cir. 2007) (citing *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005)).

[135] D.I. 313 at 5.

[136] *Id.* at 5-6.

[137] *Id.*; *see also* D.I. 325-1, Ex. G.

[138] D.I. 324 at 10-12.

[139] *Id.* at 11.

software it needed for its business model when they invested.[140]  At the time plaintiffs

filed the FAC, their alleged reasonable belief that Askew's representation was false was

based on financial information provided by Vantage Corporation indicating it purchased

the software *after* plaintiffs invested.[141]  Plaintiffs argue defendants' misrepresentations

proximately caused their investment losses.[142]  Specifically, at the time of filing they

reasonably believed Vantage Corporation was in "a dire financial position because of

[the company's] misdeeds" in light of Finegold's letter to investors and accompanying

financial statements "disclos[ing], for the first time, that Vantage [Corporation] had never

generated a profit since its inception in 2014, and the company experienced a net loss

of $3,386,576 just in 2016."[143]  Plaintiffs insist "[t]his information sufficiently supported

Plaintiffs' belief that Defendants' misrepresentations caused a decline in [Vantage

Corporation's] value and Plaintiffs' losses."[144]

The court finds plaintiffs did not violate Rule 11 with respect to Count VIII.

Plaintiffs' objectively reasonable inquiry produced a reasonable basis to believe they

had factual support for the securities fraud claims.  Polk's communications with an

accountant and other Vantage Corporation investors, as well as his own review of

financial documents showing the company's ominous financial position, provided a

sufficient basis for plaintiffs' alleged belief at the time of filing that Askew made material

misrepresentations that proximately caused plaintiffs' losses.

---

[140] *Id.* at 11-12.
[141] *Id.*; *see also* D.I. 16 ¶ 148-49; D.I. 325 ¶ 16.
[142] D.I. 324 at 12.
[143] *Id.* at 12-13; *see also* D.I. 325 ¶ 14.
[144] D.I. 324 at 13.

### 3.   Plaintiffs' Rule 11 Violations with Respect to Counts I and IV Were Not "Substantial" Under the PSLRA

The PSLRA's presumption in favor of awarding attorneys' fees is triggered only by the "*substantial* failure of any complaint to comply with any requirement of Rule 11(b)."[145]  The Second Circuit's *Gurary v. Nu-Tech Bio-Med, Inc.* is instructive regarding how to determine whether Rule 11(b) violations are substantial for PSLRA purposes:

> [The] court must first determine whether frivolous claims in violation of Rule 11 have been brought.  If they have, the court must examine whether nonfrivolous claims have been joined and, if so, whether these claims—whatever their number—are of a quality sufficient to make the suit as a whole nonabusive and the Rule 11 violation not substantial.[146]

In other words, "a substantial violation occurs whenever the nonfrivolous claims that are joined with frivolous ones are insufficiently meritorious to save the complaint as a whole from being abusive."[147]  Thus, the court must determine whether plaintiffs' violations of Rule 11(b) with respect to Counts I and IV were sufficiently substantial to make the *complaint as a whole* frivolous.

The Second Circuit has applied this framework in other PSLRA cases.  First, in *Gurary* itself, a plaintiff brought separate Rule 10b-5 claims related to his four separate purchases of the defendant company's stock.[148]  The court viewed two of the four claims as non-frivolous--primarily due to a procedural issue--but also found those two claims "patently lacked merit."[149]  Thus, the court found the plaintiff's frivolous claims

---

[145] § 78u–4(c)(3)(A)(ii) (emphasis added).

[146] 303 F.3d 212, 223 (2d Cir. 2002).

[147] *Gurary*, 303 F.3d at 222.

[148] *Id.*

[149] *Id.* at 223-24.  The plaintiff had been denied the opportunity to amend his complaint to include the two transactions, which the court found precluded their being deemed frivolous.  *See id.* at 224.

substantially violated Rule 11(b), and accordingly awarded attorneys' fees to defendants.[150]  In *Catton v. Defense Technology Systems Inc.*, the Second Circuit relied on *Gurary* to find the plaintiff's frivolous claim, which alleged the defendant's securities fraud caused the plaintiff to lose $500,000, was *not substantial* for PSLRA purposes when considering plaintiffs' other securities claims.[151]  The court upheld the district court's finding that the plaintiff's "[c]omplaint as a whole was not abusive and did not substantially fail to comply with Rule 11," and therefore the complaint did not invoke the PSLRA's presumption of an attorneys' fees and expenses award.[152]  The Fourth Circuit applied *Gurary* in *Morris v. Wachovia Securities, Inc.*, finding that one frivolous claim, which was joined by several valid claims, was insufficient to "classify the . . . complaint as a 'substantial failure' under Rule 11(b)."[153]

In the present case, the gravamen of plaintiffs' complaint against Askew was that his misrepresentations related to Vantage Corporation's 2016 Stock Offering caused them to purchase the company's shares and ultimately lose their investments.  Count VIII represents the heart of the complaint, while Counts I and IV are supplementary and more analogous of the mix of claims in *Catton* and *Morris*.  Although plaintiffs violated Rule 11(b) with respect to Counts I and IV, when the complaint is viewed as a whole, these violations do not create a substantial violation under the PSLRA.  Thus, the PSLRA's presumption of attorneys' fees and expenses is not triggered for the claims against Askew.

---

[150] *Id.* at 224-25.
[151] 541 F. App'x 25, 27, 29 (2d Cir. 2013).
[152] *Id.* at 29.
[153] 448 F.3d 268, 278-79 (4th Cir. 2006).

### 4.    The Court Finds Rule 11 Sanctions Are Not Appropriate

Although the court finds the PSLRA's presumption in favor of attorneys' fees and expenses is not triggered in the present case, the court retains discretion to impose sanctions on plaintiffs for their underlying Rule 11(b) violations:

> [E]ven if no substantial failure exist[s] under the PSLRA, partial sanctions might still be assessable under ordinary Rule 11 standards to punish not the bringing of the whole suit, but only of the frivolous claim.  In contrast, if summary judgment had been granted because the nonfrivolous claims were altogether meritless, and presented no plausible novel legal or factual contentions, the complaint as a whole would properly be viewed as prima facie abusive and, hence, as substantially failing to comply with Rule 11.  Such a complaint would not avoid the statutory presumption that a penalty of full fees and costs is appropriate.[154]

Thus, because plaintiffs violated Rule 11 with respect to Counts I and IV, the court has discretion impose ordinary Rule 11 sanctions.  Nevertheless, for similar reasons that the court finds plaintiffs' complaint as a whole does not trigger the PSLRA's statutory presumption, the court declines to do so.  As stated above, at the time they filed the complaint, plaintiffs and their counsel conducted a reasonable investigation that yielded a reasonable basis for plaintiffs' asserted belief they had factual support for the Count VIII securities fraud claims.  Because Count VIII complied with Rule 11 and served as the foundation of plaintiffs' complaint, the court elects not to impose sanctions on plaintiffs or their counsel with respect to Counts I and IV.

### 5.    Conclusion

The court finds Askew is not entitled to attorneys' fees and costs and declines to impose sanctions on plaintiffs or their counsel.

---

[154] *Gurary*, 303 F.3d at 222-23.

### E.      Finegold's Arguments

#### 1.      Plaintiffs Substantially Violated Rule 11(b) with Respect to Finegold

Finegold argues the claims against him, "*as distinct from the lawsuit as a whole*," necessitate sanctions because at the outset of this lawsuit plaintiffs knew:  (1) his only connection to their claims was his status as a control person of Vantage Corporation; and (2) his "mere status" as a control person is insufficient to hold him liable.[155] Finegold maintains Polk's knowledge that Carter and Scott must prove more than mere control person status is revealed by Polk's reliance on the same argument Finegold now makes when Polk *defended against* analogous requests for sanctions in at least one previous lawsuit.[156]  Finegold contends plaintiffs' original complaint and the FAC each failed to include any allegations of his action or inaction.[157]  He asserts plaintiffs' discovery responses (which sought no items concerning Finegold specifically) and minimal deposition questions asked to others about Finegold demonstrate the lack of support for the claims against him.[158]  It also suggests to the court an apparent lack of effort to procure such support, or perhaps lack of confidence additional effort would be

---

[155] D.I. 314 at 1 (emphasis in original).
[156] *Id.* at 1-2; *see also Ellison v. Am. Image Motor Co., Inc.*, 36 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (dismissing claim against Eversheds Sutherland—plaintiffs' lead counsel's law firm in the present case—because plaintiff[s] may not allege "controlling person" status merely by reciting a corporate officer's title without alleging actual control and the nature of the controlling person's "culpable participation" in the fraud); Mem. of Law in Supp. of Mot. to Dismiss at 7-8 (Feb. 12, 2010), *In re Regions Morgan Keegan Securities, Derivative, and Erisa Litig.*, 743 F. Supp. 2d 744 (W.D. Tenn. 2010) (showing Polk signed a memorandum in support of a motion to dismiss charges against control person defendants because "[m]erely stating that [a defendant] was a control person by virtue of his or her position as an officer or director does not suffice" for liability).
[157] D.I. 314 at 2-3.
[158] *Id.* at 3.

productive.

Notably, Carter and Scott admitted they never spoke with Finegold before investing in Vantage Corporation.[159]  Finegold also argues the Form D he executed does not establish his culpable participation in the federal securities claims, and contends the evidence suggests plaintiffs did not review the Form D until a year *after* they commenced the litigation.[160]  Similarly, he maintains plaintiffs' reliance on the letter he sent to Vantage Corporation investors "is simply *post hoc* rationalization of the groundless pursuit" against him, and notes plaintiffs did not invoke the investor letter in opposing summary judgment.[161]  Finegold insists plaintiffs brought the action against him for the improper purpose of extracting a settlement specifically from him because plaintiffs knew of the financial hardships of Vantage Corporation and Askew.[162]  Finegold notes Vantage Corporation's counsel repeatedly warned plaintiffs their frivolous claims would damage the company and would result in sanctions.[163]

Plaintiffs argue they had factual support for their allegation Finegold was liable as a control person.[164]  "Plaintiffs did not argue Finegold's 'mere status' as a generic officer or director triggered federal securities liability, but his active participation in these roles triggered liability."[165]  They contend Polk reviewed Vantage Corporation's Form D, which Finegold executed as President and Executive Officer, "and this was sufficient to

---

[159] *Id.*; *see also* D.I. 328 at 1-2.
[160] D.I. 328 at 1-2.
[161] *Id.* at 2; *see also* D.I. 325-1, Ex. G.
[162] D.I. 314 at 4-5.
[163] *Id.* at 5.
[164] D.I. 324 at 14.
[165] *Id.* (emphasis omitted).

allege control person control person status under the [1933] Act."[166]  Plaintiffs point to

Finegold's letter to investors regarding performance of their investments in Vantage

Corporation as evidence of Finegold's control person status.[167]  They also contend

"Finegold's cited authority shows that the execution of corporate duties may create

control person liability."[168]

Plaintiffs are correct that the *In re Reliance Securities Litigation* court explained:

"plaintiffs must show that defendants exercised control over the accused operations, but

need not show that defendants exercised control over the specifically accused

transaction or activity."[169]  Therefore, plaintiffs may have reasonably believed Finegold

was a control person with respect to Askew.

Crucially, however, even if Finegold was a control person, this alone does not

establish control person *liability*.  Plaintiffs omit the portion of the *In re Reliance*

*Securities Litigation* opinion discussing control person liability:

> To establish liability under the statute, however, a plaintiff must show more than
> control.  The plaintiff must show that the defendant participated in the fraud or
> furthered the fraud through inaction.  Inaction alone cannot be the basis of
> liability; defendants' inaction must be deliberate and done intentionally to further
> the fraud.[170]

Further, plaintiffs' cited case law demonstrates that a control person's

participation must be *culpable*.[171]  In arguing they reasonably believed Finegold was

liable due to his "*actual participation* in [Vantage Corporation's] operation," plaintiffs rely

---

[166] *Id.* (citing *In re Reliance Sec. Litig.*, 135 F. Supp. 2d 480, 518 (D. Del. 2001)); *see also* D.I. 325 ¶ 6.
[167] D.I. 324 at 14; *see also* D.I. 325-1, Ex. G.
[168] *Id.* at 15.
[169] 135 F. Supp. 2d at 518 (internal citations omitted).
[170] *In re Reliance*, 135 F. Supp. 2d at 518 (internal citations omitted).
[171] *See Brug v. Enstar Grp., Inc.*, 755 F. Supp. 1247, 1257 (D. Del. 1991).

on Finegold (1) authoring the investor letter discussing Vantage Corporation's financial status, and (2) signing the Form D that claimed exempt status for Vantage Corporation's offering.[172]  First, the investor letter, which undisputedly contained accurate disclosures and was sent long after plaintiffs invested in Vantage Corporation, cannot form the basis of a reasonable belief that Finegold participated in Askew's fraud purportedly enticing plaintiffs to make their investments.  Thus, the Rule 11 analysis here turns on whether plaintiffs reasonably relied on the Form D.

When the court granted Finegold summary judgment on control person liability, it found the Form D did not demonstrate Finegold's control over Askew but that it was "merely another document identifying Finegold's title."[173]  In addition, despite Polk's previous experience in cases involving control person liability and the culpable participation requirement, plaintiffs did not mention the Form D or any other facts in the FAC indicating Finegold's culpable participation in Askew's primary violation.[174]  Also, while not dispositive of a Rule 11 violation, Carter's e-mail to counsel expressing the purpose of the lawsuit was to force a settlement is particularly damaging and suggestive of the frivolousness of plaintiffs' claims against Finegold, especially considering collectability concerns related to Askew and the now insolvent Vantage Corporation.[175]

In light of the lack of factual or legal support for all of plaintiffs' federal securities claims against Finegold at the time they filed their complaint, the court finds plaintiffs

---

[172] D.I. 324 at 14-16 (emphasis in original).

[173] D.I. 231 at 10-11.  The court also noted "[a]t most, signing the Form D would demonstrate control over the drafter of the document, e.g., a law firm."  *See id.* at 10 n.56.

[174] D.I. 16; D.I. 314 at 1-3; D.I. 328 at 1-2.

[175] D.I. 319-1, Ex. L-4 at Scott_Carter_010134.

and their counsel substantially violated Rule 11 with respect to the claims against Finegold.

### 2.    PSLRA Rebuttal Evidence

Because the court finds plaintiffs substantially violated Rule 11(b) under the PSLRA with respect to Finegold, it must evaluate whether the violations were *de minimis* or would unreasonably burden plaintiffs.[176]  The court finds the alleged violations were not *de minimis* because they were central to plaintiffs' claims against Finegold.  Further, the court does not view awarding attorneys' fees to Finegold as an unreasonable burden on plaintiffs or their counsel.[177]  Tellingly, plaintiffs do not argue imposing sanctions would unreasonably burden them.[178]

Thus, the PSLRA's presumption in favor of attorneys' fees and expenses is triggered here, the violations are not *de* minimis or unreasonably burdensome, and Finegold is entitled to recover attorneys' fees and expenses.

## V.    CONCLUSION

For the foregoing reasons, the court determines:

1.    Plaintiffs violated Rule 11 when they filed Counts I and IV against Askew, but these violations were not "substantial" under the PSLRA.  Therefore,

---

[176] § 78u–4(c)(3)(B).

[177] Although Finegold does not discuss unreasonable burden issues, Askew maintains awarding attorneys' fees would not unreasonably burden plaintiffs, Polk, or Eversheds Sutherland.  D.I. 313 at 7.  He notes Carter's net worth is $20M-$25M; Scott's liquid net worth excluding her home in Colorado was $2.8M at the time of investment; and Eversheds Sutherland is a leading global law firm that announced over $1.1B in revenue for the fiscal year ending December 31, 2018.  *Id.*; D.I. 313-1, Ex. D; *Id.*, Ex. E; Press Release, Eversheds Sutherland, Eversheds Sutherland Announces 10% Increase in Global Revenue (February 7, 2019).

[178] D.I. 324.

the PSLRA's presumption in favor of attorneys' fees and expenses is not

implicated.  The court declines to impose Rule 11 sanctions on plaintiffs or

their counsel, and thus Askew is not entitled any attorneys' fees or

expenses; and

2.   Plaintiffs substantially violated Rule 11 under the PSLRA with respect to

all claims against Finegold, and Finegold is entitled to attorneys' fees and

expenses related to defending against those claims.


Dated:  July 25, 2021                                      ___/s/ Mary Pat Thynge_____
                                                           Chief U.S. Magistrate Judge