**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| TARA SCOTT, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-448-CJB |
| | ) | |
| VANTAGE CORPORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Pending before the Court in this securities lawsuit is Defendant Brian Askew's ("Askew") Motion for Determination of Rule 11 Sanctions ("Motion") to be imposed against Plaintiffs Tara Scott ("Scott") and Wilson Carter ("Carter," and with Scott, hereinafter "Plaintiffs") and their counsel at Eversheds Sutherland (US) LLC ("Eversheds Sutherland" or "Plaintiffs' Counsel"). (D.I. 376) The Motion was filed pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Federal Rule of Civil Procedure 11. (D.I. 379 at 1, 2) For the reasons and in the manner set out below, the Court GRANTS-IN-PART and DENIES-IN-PART the Motion.

## I. BACKGROUND

### A. Factual Background

In 2014, Askew formed Vantage Corporation ("Vantage"), a company that traded securities using proprietary trading software. *See Scott v. Vantage Corp.*, 845 F. App'x 170, 173 (3d Cir. 2021) ("*Scott I*"); *Scott v. Vantage Corp.*, 64 F.4th 462, 468 (3d Cir. 2023) ("*Scott II*").[1]

[1] A more detailed summary of this case's factual and procedural history up to this point may be found in *Scott I*, 845 F. App'x at 173-75 and *Scott II*, 64 F.4th at 468-69.

Askew was the Managing Partner, Head Principal and a Director at Vantage; in those roles he, *inter alia*, marketed Vantage stock and recruited investors. *Scott I*, 845 F. App'x at 174; *Scott II*, 64 F.4th at 468. Defendant Gerald Finegold ("Finegold") was Vantage's President, Vice President and Director, and he prepared materials for and met with potential investors. *Scott I*, 845 F. App'x at 174; *Scott II*, 64 F.4th at 468.

In April 2015, Vantage filed a Securities and Exchange Commission ("SEC") Form D, announcing its intent to sell unregistered securities in a 2016 stock offering under SEC Rule 506(b). *Scott I*, 845 F. App'x at 174; *Scott II*, 64 F.4th at 468. Matthew Dwyer, a non-party, assisted Askew in finding potential investors. *Scott I*, 845 F. App'x at 174; *Scott II*, 64 F.4th at 468.

Scott, a widow, used her deceased husband's life insurance proceeds to purchase $2,000,000 of Vantage stock in that 2016 offering. *Scott I*, 845 F. App'x at 174; *Scott II*, 64 F.4th at 468; *see also* (D.I. 16 at ¶¶ 22-26). Scott alleged that her stock purchase was premised on various false representations made by Askew, including that: (1) the investment was "no-risk[]"; (2) Vantage owned proprietary trading software; (3) Scott would earn back her investment in six months; (4) Scott would have a general partnership interest in Vantage or a subsidiary; and (5) 70% of Scott's investments would be placed into a segregated account. *Scott II*, 64 F.4th at 468; *see also* (D.I. 16 at ¶¶ 36-47, 75, 102, 112, 121). Similarly, Carter invested $3,000,000 in Vantage, with a portion of that investment being for his minor daughter. *Scott II*, 64 F.4th at 468; *see also* (D.I. 16 at ¶¶ 16-19).

Plaintiffs soon became concerned with Vantage's financial condition because Askew was not providing sufficient information regarding their investments. *Scott II*, 64 F.4th at 468. Plaintiffs sought to recover their investments and part ways with Vantage, but their investments

were illiquid and the stock agreements they had entered into gave them no right to rescind those investments. *Id*.

Plaintiffs then threatened to sue Askew, Finegold and Vantage, in an attempt to pressure them to return the investments. *Id*. Plaintiffs eventually did file suit in this Court against Askew, Finegold and Vantage, along with three other Vantage-related corporate entities (Vantage Advisory Management, LLC, VF (X) LP, and Tradelogix, LLC) (collectively, "Defendants"), in April 2017. (D.I. 1)[2] On November 16, 2017, Carter e-mailed Plaintiffs' counsel at Eversheds Sutherland (the "November 2017 e-mail") stating:

> All--I am told the SEC has completed their investigation and notified Vantage they are dropping their inquiries and the case.
>
> I need some sort of signal or opinion that the course of action has merit. I find the situation of paying massive legal fees vs. defendants with no assets to be untenable. The strategy was to file these complaints to force a settlement . . . I don't foresee this outcome. [P]lease help me understand what our current strategy is?

(D.I. 319, ex. L-4)

Additional facts relevant to resolution of the instant Motion will be discussed below in Section III.

[2] The four Vantage-related entities eventually filed voluntary Chapter 11 petitions in the United States Bankruptcy Court for the Northern District of Georgia; thereafter, the claims against those entities were subject to an automatic stay associated with the bankruptcy proceedings. (D.I. 231 at 2; *see also* D.I. 88) Remaining claims against those entities were later dismissed, but the case continued as to claims and counterclaims associated with Askew and Finegold (and so, as a result, the Court will primarily refer only to those two Defendants below). (D.I. 231 at 2; *see also* D.I. 360 at 11 (dismissing Plaintiffs' claims against the four Vantage-related entities))

### B. Procedural Background

Plaintiffs commenced this action against Defendants on April 20, 2017. (D.I. 1) The First Amended Complaint ("FAC"), filed on September 12, 2017, was the operative complaint thereafter; it contained 10 counts, three of which alleged violations of federal securities law (the "securities claims"). (D.I. 16) The securities claims, described in more detail below, asserted violations of the Securities Act of 1933 (the "Securities Act") and Securities Exchange Act of 1934 (the "Exchange Act"). (*Id.* at ¶¶ 53-61, 73-79, 99-108)[3]

Ultimately, on June 17, 2019, United States Magistrate Judge Mary Pat Thynge[4] granted Askew and Finegold's motion for summary judgment as to, *inter alia*, Plaintiffs' securities claims against them. (D.I. 231)[5] Judge Thynge did so for the following reasons:

- In Count One, Plaintiffs alleged a violation of Section 12(a)(1) ("Section 12(a)(1)") of the Securities Act, 15 U.S.C. § 77l(a)(1), for the sale of unregistered and non-exempt securities. (D.I. 16 at ¶¶ 53-61) According to Plaintiffs, Vantage's unregistered securities offering in 2016 violated Section 12(a)(1) because Defendants did not meet relevant registration exemption requirements. (*Id.* at ¶¶ 54-55); *Scott II*, 64 F.4th at 469. Plaintiffs had argued that Askew knowingly sold Vantage securities to unsophisticated and unaccredited investors (i.e., to Carter's then-minor child and to Dwyer, who was bankrupt at the time of his purchase), which if true would have meant that Vantage did not qualify for a Rule 506(b)

[3] Defendants later filed eight counterclaims against Plaintiffs, (D.I. 26); four of those counterclaims were substantively dismissed at the pleading stage, (D.I. 136).

[4] The parties jointly consented to Judge Thynge's jurisdiction to conduct all proceedings in this case, including trial, the entry of final judgment and all post-trial proceedings. (D.I. 5) The case was reassigned to the Court on April 17, 2023, after Judge Thynge's retirement from the bench.

[5] Judge Thynge's decision also granted summary judgment to Askew and Finegold on all but one of Plaintiffs' seven other remaining state law claims, and granted summary judgment to Plaintiffs on two (and a portion of a third) of Askew and Finegold's counterclaims; this left Plaintiffs' Count Three and two of Askew and Finegold's counterclaims as the claims that would later go to trial. (D.I. 231; D.I. 381 at 4)

exemption to be able to sell non-registered securities. (D.I. 231 at 15-24); *Scott II*, 64 F.4th at 469-70. But Judge Thynge concluded that the record showed that Askew reasonably believed that both investors were accredited at the time of their security purchases. (D.I. 231 at 15-24); *Scott II*, 64 F.4th at 470. Additionally, Judge Thynge found wanting Plaintiffs' assertion that Vantage engaged in a broad solicitation campaign equivalent to a public offering (which, if true, would also have rendered Vantage subject to the registration requirement). (D.I. 231 at 23-26); *Scott II*, 64 F.4th at 470. Therefore, Judge Thynge granted summary judgment as to Count One. (D.I. 231 at 23, 26, 28); *Scott II*, 64 F.4th at 469-70;

- In Count Four, Plaintiffs had alleged violations of Section 12(a)(2) ("Section 12(a)(2)") of the Securities Act, 15 U.S.C. § 771(a)(2), for misrepresentations made in connection with the issuance of a security. (D.I. 16 at ¶¶ 73-79) More specifically, Plaintiffs asserted that Askew made numerous misrepresentations in order to sell the Vantage stock at issue (i.e., certain of the alleged misrepresentations referenced in Section I.A. above), and that the other Defendants were liable, *inter alia*, under the doctrine of respondeat superior. (*Id*. at ¶¶ 75, 77-78) Judge Thynge granted summary judgment to Defendants on this Count as well, concluding that Section 12(a)(2) does not apply to private sales of securities (i.e., the circumstance at issue here). (D.I. 231 at 31-32); *Scott II*, 64 F.4th at 470; and

- In Count Eight, Plaintiffs alleged securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5. (D.I. 16 at ¶¶ 99-108) As with Count Four, Plaintiffs supported this claim with allegations that Askew made certain false statements with the intent to deceive and defraud, and thus induced Plaintiffs into purchasing the securities issued by Vantage. (*Id.*) To survive summary judgment, Plaintiffs were required to sufficiently establish the presence of six elements of this claim, including reliance and "'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." (D.I. 231 at 35) Judge Thynge held that, "as a matter of law, [Plaintiffs] did not reasonably rely on any purported misrepresentations, and those purported misrepresentations were not the proximate cause of [P]laintiffs' loss." (*Id*. at 39; *see also id*. at 38-42); *see also Scott II*, 64 F.4th at 470. Consequently, she granted Defendants' motion as

to Count Eight (as well as to certain other related state law claims in Counts Nine and Ten). (D.I. 231 at 42)

The then-remaining claim and the remaining counterclaims (i.e., those that had not previously been dismissed or as to which summary judgment had not been granted) went to a jury trial in November 2019. (*See* D.I. 265 at 3) The jury found for Askew and Finegold on Plaintiffs' remaining claim, and for Plaintiffs on the remaining counterclaims. (D.I. 288; *see also* D.I. 381 at 4) Thereafter, judgment was entered, (D.I. 293), and Plaintiffs appealed Judge Thynge's summary judgment ruling, (D.I. 300). On February 5, 2021, the United States Court of Appeals for the Third Circuit, *inter alia*, affirmed Judge Thynge's grant of summary judgment as to Counts One, Four and Eight. *Scott I*, 845 F. App'x at 176-79.

Once the appeal was resolved, and in line with the requirements of Section 78u-4(c) of the PSLRA, Judge Thynge addressed Rule 11. (D.I. 342) In a July 25, 2021 Memorandum Opinion (the "July 25, 2021 MO"), Judge Thynge assessed the securities claims that Plaintiffs brought against Askew, and concluded that Plaintiffs had violated Rule 11 as to those claims in certain ways. (*Id*. at 19-25) More specifically, in the July 25, 2021 MO, Judge Thynge concluded that:

- In significant part due to the content of the November 2017 e-mail, which "problematic[ally]" stated that "the purpose of filing the complaint was to force a settlement[,]" Plaintiffs had filed the FAC for an improper purpose in violation of Rule 11(b)(1). (*Id*. at 19-20 (emphasis omitted));

- Plaintiffs were "deliberately indifferent to the lack of evidentiary support" for their claims in Counts One and Four, which were "objectively frivolous" and thus violated Rule 11(b)(3). (*Id*. at 21-23 (internal quotation marks and citation omitted));

- Plaintiffs did not violate Rule 11 with respect to Count Eight as to Askew, because they had conducted an objectively reasonable inquiry and had a reasonable basis to believe that

the Rule 10b-5 securities fraud claim had factual support. (*Id*. at 23-25)

*See also Scott II*, 64 F.4th at 470-71.

Under the PSLRA, there is a presumption favoring an award of attorneys' fees and other expenses incurred in an action when there has been a "*substantial* failure of any complaint to comply with any requirement of Rule 11(b)[.]" 15 U.S.C. § 78u-4(c)(3)(A)(ii) (emphasis added); *see also* (D.I. 342 at 26). In the July 25, 2021 MO, Judge Thynge went on to conclude that Plaintiffs' Rule 11(b) violations as to Askew were *de minimis*, rather than "substantial." (D.I. 342 at 26-27) This was due to her determination that Count Eight was really the "heart of the complaint[,]" and that because Count Eight's allegations that Askew made material misrepresentations were non-frivolous, then when the operative complaint was viewed as a whole, any violations of Rule 11 did not amount to a "substantial" violation under the PSLRA. (*Id*.) As a result, Judge Thynge determined that the PSLRA's presumption that attorney's fees and expenses should be paid to Askew was not triggered. (*Id*.)[6] And from there, and utilizing the Court's retained discretion, Judge Thynge elected not to impose any sanctions on Plaintiffs and their counsel at all regarding their Rule 11 violations as to Askew. (*Id.* at 28)

[6] In the July 25, 2021 MO, Judge Thynge also determined that Plaintiffs had violated Rule 11(b) with respect to all securities claims against Finegold, in that those claims lacked legal or factual support for the allegations when made. (D.I. 342 at 29-33) Judge Thynge went on to analyze "whether the violations were *de minimis* or would unreasonably burden [P]laintiffs"; she found that they were not *de minimis* because they were central to Plaintiffs' claims against Finegold, and she concluded that awarding attorney's fees as to the Finegold claims would not unreasonably burden Plaintiffs or their counsel. (*Id*. at 33) The PSLRA's presumption therefore applied, and in light of that and the overall record, Judge Thynge ordered that Finegold was entitled to recover attorney's fees and expenses relating to defending against the non-compliant securities claims. (*Id*.) Neither Plaintiffs nor Finegold appealed the July 25, 2021 MO in this regard. *Scott II*, 64 F.4th at 470.

Askew appealed the July 25, 2021 MO. (D.I. 344) In *Scott II*, the Third Circuit affirmed the following portions of that opinion: (1) Judge Thynge's decision that Plaintiffs had violated Rule 11(b)(1) by filing the suit for an improper purpose (though the *Scott II* Court noted that this issue amounted to a "close call"); (2) Judge Thynge's conclusion that Plaintiffs had violated Rule 11(b)(3) as to Askew regarding Counts One and Four, but that Plaintiffs had not violated the Rule as to Count Eight; and (3) Judge Thynge's decision that Askew did not qualify for presumptive attorneys' fees under the PSLRA, since Plaintiffs' conduct did not amount to a "substantial failure" to obey Rule 11. 64 F.4th at 472-76.

However, the Third Circuit held that Judge Thynge had abused her discretion in declining to impose *any* sanction relating to the securities claims against Askew. *Id*. at 476-77. Noting that "[t]he PSLRA provides that a court 'shall' impose sanctions when a party has violated Rule 11[,]" 15 U.S.C. § 78u-4(c)(2), the Third Circuit ruled that the PSLRA "mandates sanctions when a court determines that Rule 11 has been violated." *Scott II*, 64 F.4th at 476-77. Thus, the *Scott II* Court remanded this case to this Court with the instruction that it "*must* impose Rule 11 sanctions" in light of Plaintiffs' noncompliance with Rule 11. *Id*. at 477. In doing so, the Third Circuit did not take a position on what a proper sanction might be; instead, it noted that the "available options run the gamut from an award of attorney's fees—as Askew initially requested—to a written order admonishing by name the individual lawyers responsible for the Rule 11(b) violations that the district court identified in [Plaintiffs'] complaint." *Id*. (internal quotation marks and citation omitted).

After *Scott II*, Judge Thynge retired from this Court. *See supra* n.4. The case was reassigned to the Court thereafter. *Id*. On October 30, 2024, Askew filed the instant Motion requesting that the Court impose sanctions. (D.I. 376) The Motion was fully briefed as of

December 13, 2024. (D.I. 382) On November 12, 2024, Finegold and Plaintiffs (as well as Plaintiffs' Counsel) stipulated to dismiss with prejudice all remaining Finegold-related sanctions claims and bills of costs. (D.I. 380)

The instant Motion as to Askew is the only motion in the case that remains pending. The Court takes it up herein.

## II. STANDARD OF REVIEW

Rule 11(b) explains that by presenting to the court a pleading, motion or other paper, counsel is certifying that: (1) to the "best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,]" *inter alia*, the filing is "not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) the claims, defenses and other legal contentions therein are "warranted by existing law or by a nonfrivolous argument" for altering the law; and (3) "the factual contentions [therein] have evidentiary support[.]" Fed. R. Civ. P. 11(b)(1)-(3). Rule 11 provides that a court *may* issue sanctions on an attorney, law firm or party if, after notice and a reasonable opportunity to respond, it determines that the Rule has been violated. Fed. R. Civ. P. 11(c)(1); *ECB USA, Inc. v. Savencia, S.A.*, Civil Action No. 19-731-RGA-CJB, 2020 WL 3893044, at *1 (D. Del. July 10, 2020) (citation omitted).

However, as was noted above, the instant action was brought in part pursuant to the PSLRA.[7] That Act requires that upon final adjudication of an action brought pursuant to the Securities Act or the Exchange Act, a court *must* review the record and *must* make specific findings regarding whether each party and each attorney for a party has complied with Rule

[7] The PSLRA applies to private securities actions which allege violations of the Securities Act, 15 U.S.C. § 77z-1(c), and the Exchange Act, 15 U.S.C. § 78u-4(c). *See Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 631 n.3 (11th Cir. 2010).

11(b). 15 U.S.C. § 78u-4(c)(1); *see also* (D.I. 342 at 12 & n.68). And if after doing so, the court finds that there has been a breach of Rule 11, then the PSLRA *mandates* the imposition of some type of sanction. *Scott II*, 64 F.4th at 476-77; *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010). Moreover, as was noted above, in a scenario wherein a Rule 11 violation amounts to a "substantial failure" to comply with the Rule, the PSLRA creates a presumption that the sanction shall be an award to the opposing party of the reasonable attorneys' fees and other expenses it incurred in the action. 15 U.S.C. § 78u-4(c)(3)(A)(ii); *Scott II*, 64 F.4th at 475. But "when the district court has found Rule 11(b) violations but the sanctions proponent fails to qualify for the [PSLRA's] presumed sanctions award, the court should select the sanction it deems appropriate under Rule 11." *Morris v. Wachovia Sec., Inc.*, 448 F.3d 268, 284 (4th Cir. 2006); *see Scott II*, 64 F.4th at 476-77.[8]

The primary purpose of Rule 11 is to deter litigation abuse, such as "bringing baseless actions or making frivolous motions"; it is not to authorize "wholesale fee shifting" against the party on the losing side of an issue. *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988); *see FedEx Supply Chain Logistics & Elecs., Inc. v. Viking Techs., LLC*, C.A. No. 21-72-CFC, 2022 WL 608087, at *3 (D. Del. Jan. 5, 2022), *report and recommendation adopted*, 2022 WL 608088 (D. Del. Jan. 21, 2022). After finding a violation of Rule 11, a court should "consider a wide range of alternative possible sanctions for violations of the [R]ule[,]" understanding that the "choice of deterrent is 'appropriate when it is the *minimum* that will serve to *adequately* deter the undesirable behavior.'" *Doering*, 857 F.2d at 194

[8] Thus, in the above-referenced ways, the PSLRA works to reduce a court's discretion in choosing whether to conduct a Rule 11 inquiry at all, and as to whether and how to sanction a party once a violation is found. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 152 (2d Cir. 2009); *see also* 15 U.S.C. § 78u-4(c)(3); *Scott II*, 64 F.4th at 476-77.

(citations omitted); *see also Loving v. Pirelli Cable Corp.*, 11 F. Supp. 2d 480, 498 (D. Del. 1998) (noting that the determination of appropriate sanctions should be "subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct") (citation omitted), *aff'd*, 178 F.3d 1279 (3d Cir. 1999).

There is not an exclusive list of factors that a court must use in determining what is the right sanction to impose for a Rule 11 violation. However, in *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191 (3d Cir. 1988), the Third Circuit set out a number of equitable considerations, including mitigating factors, that a district court can take into account when deciding on the appropriate sanction (as well as in calculating the amount of a monetary sanction, if such a sanction has been deemed appropriate in the first place). These factors include: (1) the public interest in encouraging particular suits; (2) the conduct of the parties; (3) economic considerations; (4) the attorney's history of filing frivolous actions or alternatively, his or her good reputation; (5) the defendant's need for compensation; (6) the degree of frivolousness, recognizing that cases do lie along a continuum, rather than neatly falling into either the frivolous or nonfrivolous category, and that Congressional intent, in promulgating Rule 11 sanctions, was not to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories; (7) whether the frivolousness also indicated that a less sophisticated or expensive response by the other party was required; (8) the importance of not discouraging particular types of litigation which may provide the basis for legislative and executive ameliorative action when the courts lack power to act; (9) the sanctioned party's ability to pay; and (10) whether the sanctioned party has already been subject to adverse press scrutiny as a result of the sanction.

*See Doering*, 857 F.2d at 195-97 & n.6; *Cvetko v. Derry Twp. Police Dep't*, No. 1:09-CV-01260, 2010 WL 3338256, at *6 n.17 (M.D. Pa. Aug. 24, 2010).[9]

## III. DISCUSSION

As the Court explained above, here the Third Circuit has: (1) affirmed Judge Thynge's decision that certain Rule 11 violations occurred as applied to Askew; and (2) affirmed Judge Thynge's decision that Plaintiffs and Plaintiffs' Counsel's actions did not amount to a "substantial" Rule 11 violation (so as not to implicate the presumption that the sanction imposed should be an award of reasonable attorneys' fees and costs). From here, then, the Court will follow the Third Circuit's instruction that some form of Rule 11 sanction should be imposed, and will go on to assess: (1) the type of sanctions that are available; and (2) what is the most appropriate available sanction under the circumstances. *See Scott II*, 64 F.4th at 477.

### A. What Types of Sanctions are Available to the Court?

---

[9] The Advisory Committee Notes to Rule 11 also set out a number of factors that a court might consider in determining an appropriate sanction, to include: (1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern of activity, or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) whether it was intended to injure; (6) what effect it had on the litigation process in time or expense; (7) whether the responsible person is trained in the law; (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and (9) what amount is needed to deter similar activity by other litigants. Fed. R. Civ. P. 11, Advisory Committee Notes to 1993 Amendment; *see also Keister v. PPL Corp.*, 318 F.R.D. 247, 270 & n.116 (M.D. Pa. 2015).

As can be seen, a number of these factors dovetail with the factors set out in *Doering*. Taken together, the above-referenced factors are numerous, and not all of them may have purchase in every case. For that reason, below, the Court will speak to such factors only to the extent it feels they are relevant to this matter, or to the extent that one side or the other strongly emphasized them in their briefing.

With his Motion, Askew requests that the Court impose monetary sanctions against Plaintiffs and Eversheds Sutherland, jointly and severally, in the amount of all expenses and attorney's fees incurred by Askew in this action. (D.I. 379 at 1)

In their answering brief, Plaintiffs at times appear to argue that the Court should summarily reject Askew's attempt to secure an award of attorneys' fees and expenses. (D.I. 381 at 1, 16) They say this is so because "Askew effectively seeks reconsideration of the Court's prior decision that any violations of Rule 11 were not 'substantial' under the [PSLRA], that the PSLRA's presumption in favor of attorneys' fees and expenses therefore does not apply, *and that Askew is not entitled to any attorneys' fees or expenses*." (*Id*. at 1 (emphasis added)) Asserting that the "Court should not revisit any of its prior rulings that were affirmed by the Third Circuit"—including that "Askew is not entitled to attorneys' fees"—Plaintiffs state that the Court should instead simply "select from among the many alternative non-fee/expense Rule 11 sanctions available to it." (*Id*.; *see also id*. at 7-8) In other words, Plaintiffs seem to be suggesting that the import of the Third Circuit's decision in *Scott II* was that Askew should not seek—and that the Court cannot even consider granting—an award of attorneys' fees and expenses.

Typically, courts may consider and impose a wide range of available sanctions for Rule 11 violations. Among those are monetary directives (such as a fine or award of reasonable attorneys' fees and expenses); striking the offending paper; issuance of an admonition, reprimand or censure; referring the matter to disciplinary authorities; requiring participation in seminars or other educational programs; or barring an attorney from appearing in court for a particular time. *See* Fed. R. Civ. P. 11(c)(4); *id.*, Advisory Committee Notes to the 1993 Amendment; *Doering*, 857 F.2d at 194. And here, because Plaintiffs have rebutted the PSLRA's

presumption in favor of a fee award, the Court has the discretion to award the sanction that it deems most appropriate, pursuant to Rule 11. 15 U.S.C. § 78u-4(c)(3)(C).

Understanding this, it is clear that an award of attorneys' fees and expenses is a possible sanction that is at least *still on the table* for the Court to consider. Nothing in the PSLRA's text indicates that in a case like this, where the presumption in favor of such a monetary award has been rebutted, this means that a Court is *absolutely foreclosed* from further considering whether a monetary sanction is still appropriate. *Id.*; (D.I. 379 at 16). Relatedly—and no doubt for this reason—the *Scott II* Court explicitly identified an "award of attorneys' fees" as one possible appropriate sanction that the Court might impose on remand. *See* 64 F.4th at 477;[10] *see also In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 851 F. Supp. 2d 1299, 1320-22 (S.D. Fla. 2011) (conducting a Rule 11(c) analysis after finding that the PSLRA presumption had been rebutted, and thereafter awarding limited attorneys' fees), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 503 F. App'x 677 (11th Cir. 2012); (D.I. 379 at 3). Therefore, the Court will consider all possible alternatives under Rule 11, including an award of attorneys' fees and expenses. *See Republic of Phil. v. Westinghouse Elec. Corp.*, 43 F.3d 65, 74 (3d Cir. 1994)

---

[10] It is true, as Plaintiffs note, (D.I. 381 at 6, 7), that in the opening paragraph of the *Scott II* decision, the Third Circuit stated that it was "affirm[ing] the District Court's order insofar as [the District Court] determined . . . that Askew was not entitled to attorneys' fees[,]" 64 F.4th at 466. But in looking at the broader context of the *Scott II* Court's decision on that issue, it seems clear that in this opening paragraph, the Court was referencing its affirmance of Judge Thynge's decision that Plaintiffs' Rule 11 violations as to Askew did not constitute a substantial failure under the PSLRA—such that the PSLRA's "attorney fee presumption [was] thus inapplicable here[.]" *Id*. at 476. The *Scott II* Court was *not* saying in that opening paragraph that on remand, this Court could not consider attorneys' fees and expenses as a possible sanction *at all*. It wouldn't make sense to think otherwise, since at the end of the *Scott II* opinion, as noted above, the Third Circuit explicitly stated that, on remand, an award of attorney's fees and expenses was a possible sanction that this Court *could* award.

(noting that "the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate").

**B. What Sanction Should the Court Impose?**

Next, the Court must determine what sanction it should ultimately impose. In doing so, it makes sense to start out by considering the appropriateness of the type of monetary sanction that is being sought by Askew here. On that front, Askew is asking the Court for a very broad award amounting to "*all* expenses and attorneys' fees incurred by Askew" in defending against *all* claims against him (both frivolous and non-frivolous claims) as well as in defending both Third Circuit appeals. (D.I. 379 at 1, 22 (emphasis added); *see id*. at 1, 3, 16, 21-24) It seems pretty clear that in the parties' view, this type of monetary sanction would be the most significant sanction that the Court could impose—as evidenced by the fact that it is the only sanction that Askew is pushing for, and it is the one possible sanction that Plaintiffs are fighting hard against. And that is understandable, in that this type of monetary award would be a very large one. Indeed, Askew estimates that the relevant amount could end up totaling as much as nearly $1.4 million. (*Id.* at 22-23; D.I. 382 at 1) So the Court will being by addressing whether it should impose this requested type of monetary sanction. Thereafter, (and after setting out why it declines to do so), the Court will consider other possible sanctions.

**1. Should the Court Award Attorneys' Fees and Expenses as a Sanction?**

In assessing the appropriateness of this type of monetary sanction, it is worth noting that the party moving for imposition of sanctions under Rule 11 generally carries the burden to show that sanctions are warranted. *See Rubino v. Lackawanna Cnty.*, CIVIL ACTION NO. 3:18-CV-1211, 2020 WL 241571, at *2 (M.D. Pa. Jan. 14, 2020); *Vilkofsky v. Specialized Loan Servicing, LLC*, 2:16-cv-01291-NBF, 2018 WL 2937693, at *9 (W.D. Pa. June 12, 2018) (citing cases).

And so if the dispute here is over whether a *particular type* of sanction (i.e., the payment of attorneys' fees and expenses requested by Askew) is appropriate—as opposed to some lesser sanction—then it stands to reason that Askew would also bear the burden to show that this is so. For the four reasons set forth below, the Court concludes that Askew has not met this burden.

First, and importantly, the Court recognizes that in the July 25, 2021 MO, Judge Thynge concluded that an award of attorneys' fees and expenses was *not* warranted. (D.I. 342 at 28) Judge Thynge oversaw this case for nearly five and a half years, from the initial pleading stage through to trial and the resolution of certain post-trial motions. (*See* April 26, 2017 Order; D.I. 360) She had in-depth knowledge of this matter, the litigants and the relative merit of the legal claims and defenses at issue. Armed with all of this information, Judge Thynge found that a fee award was not an appropriate sanction under Rule 11(c) (indeed, she found that no sanction should be imposed at all, though that portion of her decision amounted to an error of law).[11] And she came to this conclusion in significant part because she determined that Count Eight's securities claim as to Askew passed Rule 11 muster and served as the "heart" or the "foundation of [P]laintiffs' complaint" as to that Defendant. (D.I. 342 at 27-28)[12] In *Scott II*, the Third Circuit ruled that, on this issue, Judge Thynge had not abused her discretion; the *Scott II* Court noted that it was "reasonable" for Judge Thynge to have concluded that Count Eight "was the 'heart'" of the FAC, and that in light of this, it was a "proper exercise of discretion [by her] to

---

[11] Judge Thynge also concluded that, as to Askew, Plaintiffs conducted a reasonable inquiry before filing the lawsuit. *See Scott II*, 64 F.4th at 470.

[12] In this way, Judge Thynge was articulating her view of the "degree of frivolousness" of the suit, *Doering*, 857 F.2d at 197 n.6—and suggesting that although there were Rule 11 violations here, the degree of frivolousness as to the claims against Askew was at a somewhat low degree (i.e., not "substantial"), all things considered.

conclude that the complaint did not substantially violate Rule 11." *Scott II*, 64 F.4th at 476. With all of this in mind, it simply does not make sense to impose such a large, significant monetary sanction where the judge overseeing the entirety of the case determined not to do so—and where that same judge found that the core or gravamen of the FAC complied with Rule 11 as to Askew. (D.I. 381 at 13-16 (Plaintiffs arguing the same))

Second, the Third Circuit's opinion in *Scott II* provides some basis to suggest that a lesser sanction is appropriate. Recall that Judge Thynge found that Plaintiffs had violated Rule 11 in two ways—one of which was that Plaintiffs had infringed Rule 11(b)(1) by filing the FAC for an improper purpose. *Scott II*, 64 F.4th at 472; (D.I. 342 at 20). Key to Judge Thynge's decision there was her conclusion that the November 2017 e-mail indicated that the strategy behind Plaintiffs' filing of the FAC showed an improper purpose—i.e., that the e-mail demonstrated that the pleading was filed solely to force a settlement. (D.I. 342 at 20) The Third Circuit affirmed this decision, noting that Judge Thynge had not abused her discretion in finding a Rule 11(b)(1) violation. *Scott II*, 64 F.4th at 472. But in so doing, the *Scott II* Court noted that: (1) district courts should be wary of determining a Rule 11 violation when a plaintiff files a lawsuit simply with the ultimate goal of settling the claims; and (2) it was actually a "close call" here on the facts as to whether Plaintiffs had filed for an improper purpose (i.e., just to force a settlement) as opposed to for a proper purpose (i.e., to press valid claims with the hope, someday, of settling them). *Id.* at 472-73. Now, to be sure, any Rule 11 violation is serious, and Plaintiffs were ultimately found to have committed two different types of such violations in this case. But the Third Circuit has recognized that Rule 11 cases "do lie along a continuum, rather than neatly falling into either the frivolous or nonfrivolous category[.]" *Doering*, 857 F.2d at 197 n.6. And the Court's point is only that as to one of the two types of Rule 11 violations at play, the

appellate court seemed to suggest that the issue was nuanced—and that reasonable minds might have differed as to whether a violation occurred at all. That, at least in the Court's view, further lessens the magnitude of the Rule 11 encroachments at issue. In turn, it suggests that something other than the most significant sanction could be appropriate. (D.I. 381 at 15, 19 (suggesting the same))

Third, Askew's primary argument in support of a monetary sanction was not a particularly strong one. That argument went as follows: (1) Askew notes that his co-Defendant, Finegold, received an award of attorneys' fees for defending against the same FAC that was brought against Askew; (2) Askew argues the Court should do its best to interpret law in a way that "avoid[s] absurd or bizarre results"; and so (3) Askew asserts that he should receive at least the same award as Finegold did, because it would be "bizarre" and "absurd" for one Defendant (Finegold) to obtain monetary relief while the other (Askew) receives none. (D.I. 379 at 20-21 (quoting *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 338 (3d Cir. 2006) (internal quotation marks omitted))) But this position ignores Judge Thynge's determination that the Rule 11 violations against Finegold were "substantial[,]" while those against Askew were not. (D.I. 342 at 26-27, 29-33)[13] In the July 25, 2021 MO, Judge Thynge came to this conclusion regarding the Finegold-related claims because: (1) those claims were based solely on Finegold's "mere status" as a "control person" of Vantage; and (2) not only did Plaintiffs fail to establish Finegold's control, but Plaintiffs' allegations against Finegold seemed particularly thin as to any demonstration of his wrongful action, inaction or culpability. (*Id.* at 4-6, 29-33); *see also Scott*

---

[13] Since neither Plaintiffs nor Finegold appealed Judge Thynge's decision that the Rule 11 violations as to Finegold were substantial and that Finegold should be awarded attorneys' fees and expenses as a sanction, that decision stands unchallenged; that is also why the Third Circuit did not address this decision in *Scott II*. *Scott II*, 64 F.4th at 470.

*II*, 64 F.4th at 470 n.9. Meanwhile, the securities claims brought against Askew focused on Askew's own alleged misrepresentations concerning Vantage stock. (D.I. 342 at 27)[14] Thus, it is not incongruent for the Court to reach different outcomes regarding the nature of the sanction imposed as to the claims against Askew and Finegold.

Fourth, Plaintiffs assert (and the Court has no record before it to contradict the assertion), that Plaintiffs and Plaintiffs' Counsel do not have a "record of repeat violations." (D.I. 381 at 19) That means something, as surely one would be more inclined to adopt the more severe sanction if the subjects had a history of engaging in abuse of federal or state legal systems. *See Doering*, 857 F.2d at 197 n.6 (noting that a factor to be considered is "the attorney's history of filing frivolous actions or alternatively, his or her good reputation"); *Hightower v. Ingerman Mgmt. Co.*, Civil Action No. 17-08025, 2022 WL 19266268, at *2 (D.N.J. July 27, 2022) (determining that an award of attorney's fees was the appropriate sanction where, *inter alia*, the court had previously sanctioned the attorney "on three [prior] occasions for conduct plainly contrary to the Federal Rules in this very case"), *aff'd*, 2024 WL 2794408 (3d Cir. May 31, 2024). But that does not appear to be the case here, suggesting that deterrence could be achieved even if some lesser sanction were imposed. *See Soo San Choi v. D'Appolonia*, 252 F.R.D. 266, 268 (W.D. Pa. 2008) (concluding that the appropriate sanction was a public declaration of a violation where, *inter alia*, the attorneys did not have a history of violating Rule 11); *Seawright v. Charter Furniture Rental, Inc.*, 39 F. Supp. 2d 795, 808 (N.D. Tex. 1999) ("To the Court's

[14] It is also worth noting that Askew is currently asking for an award that is much greater than the award Finegold received. As noted above, Askew seeks "all expenses and attorneys' fees incurred by Askew" in defending all frivolous and non-frivolous claims against him and both appeals. (D.I. 379 at 1, 14, 22; *see id*. at 1, 3, 16, 21-24) Finegold, in contrast, was only deemed entitled to "attorneys' fees and expenses related to defending against those claims" against him that substantially violated Rule 11 (i.e., all such claims as to him). (D.I. 342 at 34)

knowledge, [plaintiff's counsel] has not been sanctioned for a violation of Rule 11 before. Therefore, the Court concludes and holds that a published reprimand coupled with a strong admonishment and warning to not engage in the future in the conduct chronicled above is the least severe sanction that is likely to deter [counsel] from such conduct in the future.").

In sum, of the three securities claims that Plaintiffs pressed against Askew, two were deemed frivolous, but one—the one that was the "heart of the complaint"—was not (even though that claim was ultimately not successful at the summary judgment stage). Moreover, though Plaintiffs were found to have filed the FAC for an improper purpose, that conclusion was deemed to be a "close call" by the appellate court. And this is not a case where all of the Plaintiffs' claims failed to make it past summary judgment—here, one of the original 10 claims filed against Askew survived summary judgment and required a trial. So while overall, Plaintiffs' claims here were not strong, this is also not a matter in which it can be said that every claim in the pleading was filled with frivolous, soon-to-be-dismissed allegations. And the claims were pressed by persons that have (so far as the Court knows) absolutely no prior history of bringing frivolous claims in federal or state court. Lastly, the federal judicial officer who knew the case better than any other judge not only concluded that a sanction of attorneys' fees and costs were *not* warranted regarding those claims—but that *absolutely no sanction at all* needed to be imposed on Plaintiffs and their counsel. In light of all of this, and mindful that "monetary sanctions are not encouraged under Rule 11[,]" *DiPaolo v. Moran*, 407 F.3d 140, 145 (3d Cir. 2005), the Court concludes that Askew's requested monetary sanction is simply not appropriate here.[15] Instead, a lesser (though still significant) sanction could serve as the minimum sanction

[15] The Court notes that Askew substantively addressed a few other factors relating to Rule 11 violations in his opening brief. In the end though, his arguments as to those factors were not enough to prompt a different decision.

that will adequately deter the undesirable behavior at issue from occurring in the future. *Cf. Est. of Hennis v. Balicki*, Civil Action No. 16-4216 (JBS-AMD), 2018 WL 2230543, at *3 (D.N.J. May 16, 2018) (noting that imposition of a fee-shifting sanction is typically only "appropriate for more egregious types of conduct"). The Court thus proceeds to assess what such a sanction should look like.

**2. What Sanction Should the Court Impose Instead?**

If the Court determined not to award the monetary sanction Askew requested, Plaintiffs suggested that other possible sanctions could include, *inter alia*, lesser monetary fines, publication of the sanctions order, an admonishment or reprimand, or an order to attend continuing legal education (CLE) courses. (D.I. 381 at 17-18) Indeed, courts are "encouraged to

---

For example, Askew asserted that "the sanctioned party's ability to pay" is meaningful here, in that Plaintiffs and Eversheds Sutherland are wealthy, and so "[n]o monetary sanction this Court orders will financially hurt these Plaintiffs or their attorneys." (D.I. 379 at 17) From the record evidence Askew cited on this point, (*id*. at 17-18 (citations omitted)), it does appear that at least Carter and Eversheds Sutherland have very substantial financial resources. And so if this were the only factor for the Court to consider, perhaps its decision might have been different. But it is not—as noted above, numerous other factors counsel against the requested monetary sanction.

Additionally, Askew suggests that the factor regarding "the defendant's need for compensation" supports his request for a monetary sanction, in that this "lawsuit ruined Askew financially and professionally, causing him to incur $1.3 million in attorney's fees and expenses, costing him the loss of his $20,000,000 equity position in Vantage Corp., and causing him incalculable reputational, personal, and professional damage." (*Id.* at 18; *id*. at 15-16 (Askew stating the same)) On that score, the Court does not doubt that this suit has caused harm to Askew from a personal, financial and/or monetary perspective. But it notes that the sanction it will impose below will also cause real reputational harm to Plaintiffs and their counsel, and that Plaintiffs (albeit as to the other individual Defendant, Finegold) have already suffered a financial penalty due to their Rule 11 violations. And it also notes that in terms of assessing the magnitude of the harm that Askew suffered, the Court was hindered by the fact that Askew made no real *record* on this point—all or nearly all of the assertions in these portions of his opening brief regarding harm were made without citation to any part of the record (nor to supporting declarations), and thus amounted to attorney argument. (*Id.*) In the Court's view, these facts indicate that "the defendant's need for compensation" factor should not alter its ultimate decision here.

consider imposition of non[-]monetary sanctions" in "the interest in keeping Rule 11 sanctions to the minimum severity necessary[.]" *Cvetko*, 2010 WL 3338256, at *6. In this case, the Court finds that a reprimand and publication of this opinion are sufficient sanctions to deter repetition of Plaintiffs' violative conduct as to Askew.

In doing so, the Court notes that Rule 11(c)'s "central goal" is deterrence. *Wharton v. Superintendent Graterford SCI*, 95 F.4th 140, 151 (3d Cir. 2024). And a public reprimand—by way of the publication of this opinion (and in light of the prior publication of Judge Thynge's July 25, 2021 MO in which she found Rule 11 violations, and *Scott II*'s affirmance thereof)—in turn serves that goal. This opinion formally recognizes the fact of Plaintiffs' and Plaintiffs' Counsel's Rule 11 violations, as well as the harm that those acts have caused in this matter. Such a public finding of misconduct "is not to be taken lightly[.]" *Gary v. Braddock Cemetery & Consol Energy*, 334 F. App'x 465, 467 (3d Cir. 2009). As to Plaintiffs, it will trail them in the future, and were they to file future litigation of any type, it will likely cause the relevant court and their adversaries to look particularly closely at Plaintiffs' conduct. And as to Plaintiffs' Counsel, in their profession, this type of reprimand serves as an incredibly significant "public rebuke that can reverberate within the legal community and have a profound impact on one who is supposed to stand as an officer of the court and conduct himself/herself accordingly." *Id.*; *see also Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 543 (3d Cir. 2007); *Choi*, 252 F.R.D. at 268. This type of a sanction also provides a significant deterrent effect in a way that lesser sanctions (like being required to attend CLE courses) simply would not.

Indeed, in other (and, in some cases, seemingly more severe) circumstances, the Third Circuit and district courts within this Circuit have found that a similar sanction was warranted. *See Gary*, 334 F. App'x at 466-68 (concluding the same, as to a sanction of a public reprimand in

the form of a filed Report and Recommendation against the plaintiffs' attorneys, in a matter involving a "meritless lawsuit" that had a "tortured and convoluted procedural history"); *Bapu Corp. v. Choice Hotels Int'l, Inc.*, Civ. No. 07-5938 (WJM), 2010 WL 5418972, at *4 (D.N.J. Dec. 23, 2010) (finding that a formal admonition should be sufficient to deter the relevant behavior going forward, and that plaintiffs' counsel's conduct did not "rise to the level warranting monetary sanctions[,]" in a matter where counsel had violated Rule 11 by "his repeated use of motions for reconsideration and appeals to inappropriately raise new arguments and to reiterate arguments that have already repeatedly been rejected[,]" but where the Court also had "identified some bases that [counsel] could have reasonably believed supported" his arguments in one motion at issue); *cf. Budri v. FirstFleet Inc.*, Civil Action No. 3:19-CV-0409-N-BH, 2019 WL 5580105, at *6 (N.D. Tex. Sept. 20, 2019) (sanctioning a *pro se* plaintiff with a formal reprimand and a stern warning, where the plaintiff had filed the instant suit for purposes of harassment and had made or reasserted frivolous legal contentions, but declining to impose monetary sanctions because the instant sanction went beyond any prior admonition made to him by a court), *report and recommendation adopted*, 2019 WL 5578975 (N.D. Tex. Oct. 29, 2019); *Choi*, 252 F.R.D. at 267-68 (finding that Rule 11 sanctions in the form of a public declaration of a violation was appropriate and that monetary sanctions were not, where, *inter alia*, the plaintiffs' counsel's approach "was certainly not devoid of all factual and legal support[,]" counsel did not have a prior history of violating Rule 11 and the "public acknowledgment of a Rule 11 violation does level a significant sanction"). Such an outcome seems most appropriate here too, for the reasons set out above.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS-IN-PART and DENIES-IN-PART Askew's Motion. More specifically, the Court GRANTS the Motion to the extent it seeks imposition of Rule 11 sanctions, but DENIES the Motion to the extent it requests that the Court order that Plaintiffs' and Plaintiffs' Counsel pay Askew's attorneys' fees and expenses incurred in defending the claims against him. Instead, the Court ORDERS that the appropriate sanction under Rule 11(c) is a formal reprimand as set out herein. By publication of this Memorandum Opinion, Plaintiffs and their counsel at Eversheds Sutherland are admonished for having failed to faithfully comply with the strictures of Rule 11 in this case, and are reminded of the need to scrupulously do so going forward.[16]

By no later than **October 9, 2026**, the parties shall provide the Court with a joint status report as to what more, if anything, the Court needs to address regarding this litigation in light of its decision herein.[17]

Dated: October 2, 2026

Christopher J. Burke
Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE

---

[16] S. Lawrence Polk and Amanda R. Giffin are the attorneys at Eversheds Sutherland that filed the FAC. (D.I. 16 at 19; *see also* D.I. 318 at 1)

[17] In Plaintiffs' answering brief, they suggested that the Court could possibly adopt Askew's position as to the appropriate amount regarding his bill of costs, and award Askew all of his requested costs (without considering the merit of any disputed bill-of-cost-issues), as a type of sanction. (D.I. 381 at 19) The Court has not taken this route here, in part because it is not sure if it would be lawful to adopt that type of "sanction" in that manner. But in light of Plaintiffs' statements, which could be read to suggest that Askew's bill-of-costs-related positions have some merit, the Court hopes that the parties can resolve any disputed bill of costs issues without need for further Court intervention.